# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 14, 2012

No. 11-60509

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

WALTER W. TEEL; PAUL S. MINOR; JOHN H. WHITFIELD,

Defendants - Appellants

Appeals from the United States District Court
for the Southern District of Mississippi

Before KING, PRADO, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Appellants Walter W. Teel ("Teel"), Paul S. Minor ("Minor"), and John H. Whitfield ("Whitfield") (collectively, "Appellants") raise several appellate issues arising from their final amended judgments of convictions and sentences entered by the district court after this court remanded the case for resentencing in *United States v. Whitfield*, 590 F.3d 325 (5th Cir. 2009). Specifically, Appellants challenge: (1) the jury instructions for erroneously defining honest-services fraud; (2) the indictment for failure to state an offense; and (3) whether the

No. 11-60509

district court committed various errors in sentencing Minor and Whitfield.[1] We AFFIRM.

## I. Original Appeal

Because the complete factual history is extensively set out in *Whitfield*, we only summarize the relevant procedural history.

In 2007, a jury found Appellants guilty on all charges. Minor received 132 months of imprisonment to be followed by three years of supervised release, was fined $2.75 million ($250,000 for each of his eleven counts of conviction), and, along with Teel, was ordered to pay $1.5 million as restitution to United States Fidelity and Guaranty ("USF&G"), the victim of the Minor/Teel bribery scheme. In addition to the restitution order, Teel received seventy months of imprisonment and two years of supervised release. Whitfield received 110 months of imprisonment, three years of supervised release, and a $125,000 fine.

In *Whitfield*, however, we concluded that the district court committed plain error when it denied Appellants' motions for judgment of acquittal under Federal Rule of Criminal Procedure 29 on the 18 U.S.C. § 666 counts of the indictment. Accordingly, we reversed all of the convictions related to federal program bribery in violation of § 666, including Minor and Teel's convictions for conspiracy to commit federal program bribery. However, we affirmed each remaining count of conviction, specifically, Appellants' convictions for honest-services mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1346,[2]

---

[1] As stated in their opening and reply briefs, Whitfield and Teel join Minor in the challenges to the indictment and the jury instructions, and adopt the relevant portions from Minor's opening and reply briefs accordingly. However, while Minor and Whitfield also raise various appellate issues stemming from their resentencings, Teel, who has completed his imprisonment term, does not.

[2] 18 U.S.C. §§ 1341 and 1343 criminalize the use of the mails or wires, respectively, in furtherance of "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1346 defines the term "scheme or artifice to defraud" to include "a scheme or artifice to deprive another of the intangible right of honest services."

No. 11-60509

Minor and Whitfield's convictions for conspiracy in violation of 18 U.S.C. § 371, and Minor's conviction for racketeering in violation of 18 U.S.C. § 1962(c).

In light of the foregoing, we vacated each Appellant's sentence and remanded the case for resentencing. Thereafter, Minor unsuccessfully petitioned this court for rehearing, and each Appellant unsuccessfully petitioned the Supreme Court for a writ of certiorari.

On remand for resentencing, Minor, joined by Whitfield and Teel, filed in the district court a motion to vacate their convictions in light of the Supreme Court's decision in *Skilling v. United States*, 130 S. Ct. 2896 (2010). Appellants argued that *Skilling* was an intervening change of law by a controlling authority that rendered the indictment and jury instructions erroneous. After receiving supplemental briefing and hearing argument, the district court denied Appellants' motion.

The district court then resentenced Appellants. Whitfield received seventy-five months of imprisonment and two years of supervised release. Teel received fifty-one months of imprisonment and two years of supervised release. Minor received ninety-six months imprisonment[3] to be followed by three years of supervised release, and was fined $2 million ($250,000 for each of his eight remaining counts of conviction). Also, as before, Minor and Teel were ordered jointly and severally to pay restitution to USF&G. This timely appeal followed.

## II. Current Appeal: Convictions and Law of the Case

Between the original appeal and the current appeal, the Supreme Court decided *Skilling*. In that case, Defendant Jeffrey Skilling ("Skilling") was charged with and convicted of, *inter alia*, conspiracy to commit securities and wire fraud. *See id.* at 2908. Specifically, according to the indictment, "Skilling

---

[3] Whitfield's second imprisonment sentence was, in total, thirty-five months lower than his original sentence, Teel's imprisonment sentence was nineteen months lower, and Minor's imprisonment sentence was thirty-six months lower.

had sought to 'depriv[e] Enron and its shareholders of the intangible right of [his] honest services.'" *Id.* (alterations in original). The Supreme Court granted certiorari to address whether Skilling's conviction for conspiracy to commit honest-services wire fraud was improper: "We . . . consider whether Skilling's conspiracy conviction was premised on an improper theory of honest-services wire fraud. The honest-services statute, § 1346, Skilling maintains, is unconstitutionally vague. Alternatively, he contends that his conduct does not fall within the statute's compass." *Id.* at 2925-26. The Court determined that § 1346 is not unconstitutionally vague, but that its reach is limited to bribery and kickback schemes, not other conduct, such as conflict-of-interest schemes. *Id.* at 2930-34.

Appellants argue that *Skilling* changed the law of honest-services fraud to render both the jury instructions and the indictment in this case erroneous. Specifically, Appellants allege that the jury instructions were erroneous because they incorporated the Mississippi-state-law definition of bribery. In addition, Appellants allege that the indictment failed to state an offense under § 1346 because instead of charging bribery under federal law, the relevant counts charged that "honest services" are those "performed free from deceit, bias, self-dealing, and concealment." In this way, Appellants continue, the indictment charged a conflict-of-interest scheme, which *Skilling* specifically excludes from § 1346's compass. According to Appellants, each of these errors independently requires reversal of their convictions.

These arguments implicate the law-of-the-case doctrine. Under that doctrine, the district court on remand, or the appellate court on a subsequent appeal, abstains from reexamining an issue of fact or law that has already been decided on appeal. *See, e.g., United States v. Carales-Villalta*, 617 F.3d 342, 344 (5th Cir. 2010). A facet or corollary of the law-of-the-case doctrine is the mandate rule. *See United States v. Becerra*, 155 F.3d 740, 753 (5th Cir. 1998),

*abrogated on other grounds by United States v. Booker*, 543 U.S. 220 (2005). Under the mandate rule, "[a] district court on remand 'must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court.'" *United States v. McCrimmon*, 443 F.3d 454, 459 (5th Cir. 2006) (quoting *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002)).

Accordingly, the mandate rule "prohibits a district court on remand from reexamining an issue of law or fact previously decided on appeal and not resubmitted to the trial court on remand. This prohibition covers issues decided both expressly and by necessary implication . . . ." *United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006) (per curiam). "Additionally, pursuant to the 'waiver approach' to the mandate rule," *McCrimmon*, 443 F.3d at 459, "'[a]ll other issues not arising out of this court's ruling and not raised before the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below,'" *Pineiro*, 470 F.3d at 205 (citation omitted). *See also United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004) ("Absent exceptional circumstances, the mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court. Moreover, the rule bars litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court."). "We review *de novo* a district court's application of the remand order, including whether the law-of-the-case doctrine or mandate rule forecloses the district court's actions on remand." *Carales-Villalta*, 617 F.3d at 344.

Both the law-of-the-case doctrine and the mandate rule are discretionary practices, not jurisdictional rules, and they are subject to an exception Appellants urge here: that "there has been an intervening change of law by a controlling authority." *Matthews*, 312 F.3d at 657. Appellants contend that

No. 11-60509

their challenges to the jury instructions and the indictment were properly before the district court on remand for resentencing because *Skilling* satisfies the intervening-change-of-law exception. We disagree.

Appellants argue that, after *Skilling*, § 1346 criminalizes only bribery and kickbacks under *federal law*, thereby specifically excluding bribery and kickbacks under state law. According to Appellants, by the *Skilling* Court's stating that its "construction of § 1346 'establish[es] a uniform national standard," 130 S. Ct. at 2933 (alteration in original), the Court could only have meant federal law. A fair reading of *Skilling*, however, reveals that the Court was establishing a uniform national standard by construing § 1346 to clearly exclude conduct outside of bribery and kickbacks, such as conflict-of-interest schemes, not to establish *federal law* as the uniform national standard for the elements of bribery and kickbacks in § 1346 prosecutions.[4] Moreover, the *Skilling* Court further asserted that "[o]verlap with other federal statutes does not render § 1346 superfluous. The principal federal bribery statute, [18 U.S.C.] § 201, for example, generally applies only to federal public officials, so § 1346's application to *state and local corruption* and to private sector fraud reaches misconduct that might otherwise go unpunished." *Id.* at 2934 n.45 (emphasis added). Accordingly, we read *Skilling* as recognizing that § 1346 prosecutions may involve misconduct that is also a violation of state law.

In *Whitfield*, we recognized that "the district court based its definition of bribery in the jury charge on the Mississippi offense of bribery," and that the "jury charge was also consistent with the language of the Fifth Circuit Pattern

---

[4] Additionally, it is notable that in *Black v. United States*, 130 S. Ct. 2963 (2010), a companion case to *Skilling* decided the same day, the Supreme Court stated that it had "decided in *Skilling* that § 1346, properly confined, criminalizes only schemes to defraud that involve bribes or kickbacks." *Id.* at 2968. If *Skilling* had indeed held that § 1346 criminalizes only schemes to defraud that involve bribes or kickbacks under *federal law*, it is only reasonable that the Court would have said as much in *Black*.

No. 11-60509

Jury Instructions on 'Bribery of a Public Official' under 18 U.S.C. § 201(b)(1) and 'Receiving Bribe by Public Official' under 18 U.S.C. § 201(b)(2)." 590 F.3d at 348. Moreover, we made clear that "in order to constitute a federal crime, the state statute must concern 'something close to bribery' and . . . 'the mere violation of a gratuity statute . . . will not suffice.'" *Id.* (citing *United States v. Brumley*, 116 F.3d 728, 734 (5th Cir. 1997) (en banc)). Accordingly, *Whitfield* was fully consonant with *Skilling*, and nothing in the *Skilling* opinion suggests that our analysis of the jury instructions in *Whitfield* was incorrect. To the contrary, *Skilling* cites approvingly to *Whitfield* for our analysis of the district court's jury instructions regarding bribery. 130 S. Ct. at 2934.

Furthermore, although *Skilling* changed the law of honest-services fraud to exclude the conflict-of-interest category of cases from § 1346's scope, *see id.* at 2931-32, this is not an intervening change of law as applied to the facts of this case because Appellants were charged with bribery schemes. Indeed, as we observed in *Whitfield*, this case involved "two prolonged bribery schemes spanning nearly four years each."[5] 590 F.3d at 352. The mere inclusion of the "performed free from deceit, bias, self-dealing, and concealment" language did not transform the bribery schemes charged in the indictment into conflict-of-interest schemes.

Based on the foregoing, the intervening-change-of-law exception is inapplicable to this case. Accordingly, the mandate rule bars litigation of these arguments.[6] *See Pineiro*, 470 F.3d at 205; *McCrimmon*, 443 F.3d at 459. We

---

[5] In the instant appeal, Appellants attempt to re-litigate whether they were guilty of any wrongdoing. In fact, they even re-urge that Minor's transactions with Whitfield and Teel were constitutionally protected political campaign contributions that qualified for First Amendment protection. We decline Appellants' invitation to entertain this attempted "second bite at the apple." *See, e.g., Carales-Villalta*, 617 F.3d at 344-45; *United States v. Slanina*, 359 F.3d 356, 358 (5th Cir. 2004) (per curiam).

[6] Even if the mandate rule did not foreclose Appellants' arguments, we need not address them here because they were never raised at trial or in the initial appeal. Moreover,

No. 11-60509

decline the invitation to revisit Appellants' convictions that were affirmed in *Whitfield*.

## III.  Current Appeal: Sentences

## A.    Standard of Review

Minor and Whitfield also contend that the district court committed various sentencing errors on remand that require this court to vacate their sentences and remand for resentencing.   In particular, Minor and Whitfield raise arguments specific to their individual resentencings.   In addition, both argue that the district court erred in calculating the benefit received from the Minor/Whitfield bribery scheme.[7]

"In reviewing a sentencing decision, we first must consider whether the district court committed a significant procedural error, such as improperly calculating the [Sentencing] Guidelines range, treating the Guidelines as mandatory, or selecting a sentence based on clearly erroneous facts.   If the sentence is procedurally sound, we then consider the 'substantive reasonableness

---

we note that even though *Skilling* was decided while Appellants' certiorari petitions were still pending in the Supreme Court, Appellants did not ask the Court to vacate their convictions in light of *Skilling*.  *See, e.g.,* FED. R. APP. P. 28; *Lofton v. McNeil Consumer & Specialty Pharm.*, 672 F.3d 372, 381 (5th Cir. 2012) ("'[A]rguments not raised before the district court are waived and will not be considered on appeal unless the party can demonstrate extraordinary circumstances.'  The Fifth Circuit has a 'virtually universal practice of refusing to address matters raised for the first time on appeal.'" (alteration in original) (citations omitted)); *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) (per curiam) ("It has long been the rule in this circuit that any issues not briefed on appeal are waived.").

[7] Minor also alleges that the district court erred in calculating the benefit received from the Minor/Teel bribery scheme.  In that scheme, Minor arranged and paid off a bank loan for Teel in exchange for Teel's rendering a favorable disposition in *Peoples Bank v. United States Fidelity & Guaranty*, resulting in a $1.5 million settlement in favor of Minor's client, Peoples Bank.  *See Whitfield*, 590 F.3d at 339-41.  The crux of Minor's challenge to the district court's calculation in regard to the Minor/Teel scheme is that even without Teel's actions, USF&G would not have been spared the need to settle *Peoples Bank* at a substantial price.  This argument is foreclosed, however, by the law of the case—as stated in *Whitfield*, "USF&G would have had no need to settle the case" for $1.5 million had it not been for Teel's actions. *Id.* at 368.  Accordingly, we do not disturb the district court's calculation of the benefit received from the Minor/Teel bribery scheme as $1.5 million.

of the sentence imposed under an abuse-of-discretion standard.'" *United States v. Delgado-Martinez*, 564 F.3d 750, 751 (5th Cir. 2009); *see also United States v. Simmons*, 649 F.3d 301, 303 (5th Cir.) (per curiam), *cert. denied*, 132 S. Ct. 857 (2011) ("We ordinarily review sentences for procedural error and for substantive reasonableness, applying an abuse of discretion standard.").

In addition, "[i]n exercising this bifurcated review process, we continue to review the district court's application of the Guidelines de novo and its factual findings for clear error." *Delgado-Martinez*, 564 F.3d at 751; *see also United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *Cisneros-Gutierrez*, 517 F.3d at 764 (citation and internal quotation marks omitted). "'However, a finding will be deemed clearly erroneous if, based on the record as a whole, we are left with the definite and firm conviction that a mistake has been committed.'" *United States v. Miller*, 607 F.3d 144, 148 (5th Cir. 2010) (citation omitted); *see also United States v. Campbell*, 106 F.3d 64, 66 (5th Cir. 1997) ("[A] district court retains wide discretion in sentencing, and the sentencing decision is entitled to considerable deference.").

## B.    Whitfield's Prison Sentence

In *Whitfield*, we reversed Whitfield's conviction for federal program bribery, but affirmed his convictions on all other counts, specifically, counts one, four, five, six, and seven (conspiracy and mail fraud/honest-services fraud). For the affirmed counts of conviction, the district court had originally sentenced Whitfield to an imprisonment term of sixty months. On remand, however, the district court imposed a different sentence for count seven alone, specifically, imposing seventy-five months imprisonment instead of the sixty-month-term imposed for the other counts. Thus, with all sentences running concurrently, Whitfield received a total imprisonment term of seventy-five months. Whitfield objected to the increase in the sentence for count seven in the absence of

No. 11-60509

intervening aggravating factors, but the district court overruled the objection: "If I had not had Count 11 [federal program bribery] available at the first sentence, then my address of Count 7 [mail fraud/honest-services fraud] would have been different.  So your objection is on record, but my motive for doing so was because I had at that time Count 11 for the Court's consideration."

Here, Whitfield claims that the district court on remand imposed a presumptively vindictive sentence upon him in violation of *North Carolina v. Pearce*, 395 U.S. 711 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989).  Specifically, he alleges that the imposed imprisonment term of seventy-five months as to count seven, which was fifteen months longer than the imprisonment term for count seven imposed in 2007, was presumptively vindictive even though his total sentence was actually reduced.

"We review the question of whether a sentence is vindictive, and thus unconstitutional, *de novo*."  *Campbell*, 106 F.3d at 66.  For the purpose of reviewing this question, we expressly adopted in *Campbell* the aggregate approach, under which "courts compare the total original sentence to the total sentence after resentencing.  If the new sentence is greater than the original sentence, the new sentence is considered more severe."[8]  *Id.* at 68.

Whitfield alleges that the holding of *Campbell* does not foreclose his argument because his case falls into *Campbell*'s recognized exceptions to its holdings, claiming that the counts were not related and the original sentences were not imposed as part of a "sentencing package." *See id.* at 68 n.4.  However, as in *Campbell*, none of these facts are present here.  Specifically, the counts

---

[8] Whitfield urges this court to re-examine its adoption of the aggregate approach, and adopt instead the "remainder aggregate" or "count-by-count" approach.  This argument, however, is foreclosed by the rule of orderliness. *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F. 3d 375, 378 (5th Cir. 2008) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decisions, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court.").

No. 11-60509

were related because they all involved bribery. In addition, despite never using the phrase "sentencing package," the district court clearly used the package approach as demonstrated by its explanation: had it not been for the availability of the lengthier sentence under count eleven, it would have imposed a different sentence for count seven. *Cf. United States v. Bass*, 104 F. App'x 997, 1000 (5th Cir. 2004) (per curiam) (unpublished) ("When a defendant is convicted of more than one count of a multicount indictment, the district court is likely to fashion a sentencing package in which sentences on individual counts are interdependent."). Furthermore, nothing in the district court's explanation suggests that the reason for its decision was anything other than clearly objective, let alone vindictive or plainly unreasonable. Finally, the district court also commented that it had no obligation to reduce Whitfield's sentence given the guideline range, but that it would do so because Whitfield had accepted responsibility, and that it would further vary downward from the guideline range because of Whitfield's medical issues and his positive post-offense conduct. Accordingly, it appears that the district court was actually being quite lenient. Thus, under *Campbell*'s aggregate approach, Whitfield's claim of vindictiveness fails.[9]

## C.    **Minor's Prison Sentence**

Minor argues that while addressing the sentencing factors under 18 U.S.C. § 3553(a), the district court erred by giving him a longer sentence to promote his alcohol rehabilitation. The government concedes that under *Tapia v. United States*, 131 S. Ct. 2382 (2011), the district court erred if it lengthened Minor's

---

[9] Whitfield also makes two unsupported arguments—that his sentence was based upon racial discrimination such that it was disproportionately greater than his fellow defendants, and that the application of the obstruction-of-justice enhancement was inappropriate. However, he fails to cite any authority for these arguments, so we deem them waived. *See* FED. R. APP. P. 28(a)(9)(A); *Lofton*, 672 F.3d at 381; *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument.").

prison sentence to allow for alcohol rehabilitation as arguably suggested by the written statement of reasons.[10]  *See id.* at 2393 ("[A] court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation."); *see also* 18 U.S.C. § 3582(a) ("[I]mprisonment is not an appropriate means of promoting correction and rehabilitation.").  The parties, however, do not agree on the standard of review applicable here.

It is unnecessary to determine the standard of review for this issue, however, because even if the district court impermissibly addressed Minor's need for alcohol treatment, this consideration is harmless error in this case.  When the term of imprisonment is not lengthened by a district court's consideration of an impermissible factor, such as the need for rehabilitation, reversal is not required.  *See United States. v. Tolbert*, 668 F.3d 798, 803 (6th Cir. 2012) (holding that the defendant's sentence was substantively reasonable because "the district court did not impermissibly impose or lengthen [his] sentence to enable him to complete a treatment program or promote his rehabilitation"); *United States v. Cardenas-Mireles*, 446 F. App'x 991, 994-95 (10th Cir. 2011) (unpublished), *cert. denied*, 80 U.S.L.W. 3596 (U.S. Apr. 23, 2012) (No. 11-9539) ("[T]he question is not merely whether the district court had Cardenas-Mireles's medical needs on its mind when it issued his sentence, but whether the court's assessment of his medical needs actually changed the sentence the court would otherwise have imposed.").

At the resentencing hearing, the district court made clear that although the same Guidelines range of 121 to 151 months was applicable, it was choosing

[10] The written statement of reasons—filed three days before the Supreme Court's decision in *Tapia*—stated as follows: "As to the need to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner - Mr. Minor has a serious history of alcohol abuse, and he needs a sufficient amount of time in prison to fully benefit from alcohol treatment."

to vary *downward* to ninety-six months, a total downward deviation of twenty-five months from the minimum of the Guidelines range. The district court explained that although it could have imposed the same sentence as before, since the last sentencing, Minor had "earned the reduction" based on his rehabilitative conduct, which largely focused on his alcohol abuse. Moreover, the district court recollected that it had been necessary to send Minor to a rehab center previously, but that it was encouraged to know that Minor had conquered his problems and would continue to do so.

Furthermore, in the written statement of reasons, the district court referenced Minor's participation in bribery schemes with two separate trial court judges under three separate § 3553(a) factors, rendering it likely to have been the most salient fact for the district court in determining the length of Minor's sentence. In addition, whereas the district court mentioned the alcohol treatment program that had already occurred, nowhere did it reference any specific treatment program in the future that would require lengthening Minor's sentence. *See Tapia* 131 S. Ct. at 2392-93 (noting that a court does not commit error simply by discussing the opportunities for rehabilitation within prison, but in the case at bar, the court had committed error by "select[ing] the length of the sentence to ensure that [the defendant] could complete the 500 Hour Drug Program").

Thus, nothing in the record suggests that the district court actually lengthened Minor's sentence based on its consideration of his need for alcohol rehabilitation. To the contrary, it appears that the consideration of alcohol treatment was based upon events in the past, not anticipated "rehabilitation" in prison in the future. Accordingly, we reject this argument.

## D.   Minor and Whitfield's Sentences: Loss Enhancement

In exchange for Minor's arranging of bank loans for Whitfield in the total amount of $140,000, Whitfield arranged to preside over *Marks v. Diamond*

*Offshore Management Co.*, and to render a decision in favor of Archie Marks ("Marks"), Minor's client. *See Whitfield*, 590 F.3d at 337-38. After conducting the bench trial, Whitfield ruled in favor of Marks and awarded him $3.75 million in damages, but subsequently reduced the award to $3.64 million in response to post-trial motions. *Id.* $3 million of the $3.64 million award "was attributable to noneconomic 'soft' damages." *Id.* at 338. The defendant in *Marks* "later appealed to the Mississippi Supreme Court, which, sitting *en banc*, affirmed the finding of liability" but reduced the total award to $1.64 million. *Id.* In light of Minor and Whitfield's criminal convictions, however, the Mississippi Supreme Court withdrew its original opinion, vacated Whitfield's judgment, and remanded the *Marks* case for a new trial on all issues. *See id.* at 338 n.5. The new trial resulted in a damages award of only $383,000.

In the first appeal, Minor and Whitfield challenged their enhanced sentences on the grounds that "the district court erred in including the full amount of the original award in *Marks* ($3.75 million) in their respective loss calculations." *Id.* at 367. There, we determined that the Guideline regarding bribery-related offenses, U.S.S.G. § 2C1.1, was applicable to the case "because the jury found appellants guilty on a theory of bribery." *Id.* Having done so, we also observed that "U.S.S.G. § 2C1.1(b)(2) provides for an enhanced sentence if the 'value of the payment' or 'the benefit received or to be received in return for the payment' exceeds $5,000. The level of enhancement is dictated by the table in U.S.S.G. § 2B1.1." *Id.* We also recognized that "Application Note 2 of U.S.S.G. § 2B1.1 provides that the loss should be determined by the greater of the actual loss or intended loss, which is defined in relevant part as 'the pecuniary harm that was intended to result from the offense.'" *Id.*

In light of the remand for resentencing, however, we declined to address whether the district court clearly erred in determining the amount of the benefit received, except to "suggest that the district court might more properly rely on

the actual amount awarded by Whitfield in the *Marks* case ($3.64 million) adjusted by taking into account a reasonable estimate of whatever intrinsic value that case may have had if litigated before an impartial judge." *Id.* at 368.

Here, Whitfield and Minor argue that on remand, the district court again erroneously enhanced their respective sentences. Specifically, they contend that the district court should not have used the $383,000 award from the new trial of *Marks* as the intrinsic value that *Marks* may have had if it had been litigated before an impartial judge. They allege that the $383,000 award was reached a decade later with different evidence of the plaintiff's medical condition, which had substantially improved by the time of retrial. Accordingly, they maintain that the district court erred by basing its loss calculation for enhancement purposes on the difference between the $3.64 million Whitfield actually awarded in *Marks* and the $383,000 award from the new trial.

We review the district court's finding of fact regarding the amount of the benefit received for clear error. *See, e.g., United States v. Griffin*, 324 F.3d 330, 365 (5th Cir. 2003) ("The amount of the benefit to be received is a fact finding issue that is reviewed for clear error."). With respect to Minor, even if we used the $1.64 million figure from the Mississippi Supreme Court's opinion as the "intrinsic value" of *Marks*, he would still qualify for the eighteen-level enhancement that he received on remand because his loss calculations for enhancement purposes include the benefit received from both the Minor/Whitfield scheme and the Minor/Teel scheme. In other words, using the $2 million difference instead of the number actually used would still not qualify Minor for a smaller enhancement. *See* U.S.S.G. § 2B1.1(b)(1)(J) (any loss amount between $2.5 million and $7 million increases the offense level by eighteen).

With respect to Whitfield, using the higher "intrinsic value" number and, therefore, calculating a lower "loss" amount would yield a smaller enhancement,

No. 11-60509

taking the enhancement from eighteen levels to sixteen.[11] *See id.* § 2B1.1(b)(1)(I) (any loss amount between $1 million and $2.5 million increases the offense level by sixteen). Thus, with a criminal history category of I and a base offense level of ten, Whitfield's total offense level would become twenty-six, with an advisory guideline range for imprisonment of sixty-three to seventy-eight months, instead of twenty-eight, with an advisory guideline range of seventy-eight to ninety-seven months. Accordingly, we must consider whether the district court "clearly erred" in using the $383,000 figure.

Whitfield argues that the $383,000 figure reflects a different time period—ten years after the original trial—with more information about the underlying litigant's damages and improved condition. While that may be so, we cannot conclude that the passage of time and ensuing additional information renders the use of this figure "clearly erroneous." Calculating the "intrinsic value" of the *Marks* case is an imprecise endeavor, and we require only that the district court make a reasonable estimate. *See United States v. Goss*, 549 F.3d 1013, 1019 (5th Cir. 2008) ("[T]he district court cannot achieve absolute certainty in determining the . . . losses. Instead, '[t]he court need only make a *reasonable estimate* of the loss.'" (quoting *United States v. Holbrook*, 499 F.3d 466, 468 (5th Cir. 2007))); *see also Griffin*, 324 F.3d at 366 ("The district court need not determine the value of the benefit with precision."). Moreover, "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to

---

[11] Here, and in connection with Whitfield's challenge to the obstruction-of-justice enhancement discussed above, the government argues, as it did during the first appeal, that "any error in sentencing was harmless because the district court incorrectly applied the more lenient United States Sentencing Guidelines from 2001 rather than the Guidelines as amended in 2006." *Whitfield*, 590 F.3d at 366. We declined to address this argument in *Whitfield* because it was not dispositive. *Id.* ("The fact that [the] district court used the 2001 Guidelines instead of the 2006 Guidelines does not necessarily mean that appellants were not prejudiced by any alleged errors in their sentencing."). For the same reason, we likewise decline to consider the government's argument here.

appropriate deference." *Holbrook*, 499 F.3d at 468 (citation and internal quotation marks omitted). Because the $383,000 award was a reasonable estimate of the "intrinsic value" of *Marks*, we conclude that the district court did not clearly err.

Even if the calculation was in error, we conclude such error was harmless. *See* FED. R. CRIM. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); *Williams v. United States*, 503 U.S. 193, 203 (1992) ("[O]nce the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, *i.e.,* that the error did not affect the district court's selection of the sentence imposed."); *Delgado-Martinez*, 564 F.3d at 752-53 ("[C]ertain 'harmless' errors do not warrant reversal."). Whitfield received an imprisonment sentence of seventy-five months, which falls well within the range for the putative revised total offense level of twenty-six. The record as a whole suggests that the calculation of Whitfield's sentence was not influenced by this alleged error. Accordingly, we conclude no reversible error was committed in the loss enhancement.

## E.    Minor's Sentence: Fines

According to the district court's written statement of reasons for resentencing, the district court imposed on Minor the maximum fine of $250,000 on each count, *see* U.S.S.G. § 5H1.10, resulting in a total fine of $2 million dollars:

> The Court finds [Minor] has the ability to pay a fine in addition to restitution. In ordering a fine, the Court has considered the advisory guidelines range of $17,500 to $175,000, in addition to the sentencing factors in 18 U.S.C. § 3553(a). The Court has determined there are aggravating circumstances relating to this defendant's conduct and other facts specific to the case at hand which leads the Court to conclude that a variance from the advisory

guideline fine range is fair and reasonable. The Court has been made aware that the defendant failed during the presentence investigation to disclose the existence of an asset valued at approximately $5,000,000, which was transferred by him by way of quit claim deed to his wife and subsequently to a limited liability company controlled by his wife within days of the indictment and his arrest in this case. Additionally, the Court recognizes the need for the amount of the fine to be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive to this defendant, who has substantial assets and income; and will provide deterrence to other criminal activity. It is therefore the order of the Court that the defendant pay a fine of $250,000 per count, for a total fine of $2,000,000.00.

Minor contends that the district court abused its discretion in setting his fine.[12] Specifically, citing *United States v. Painter*, 375 F.3d 336 (5th Cir. 2004) and *United States v. Graham*, 946 F.2d 19 (4th Cir. 1991), Minor argues that the district court relied on his financial status when it varied from the Guidelines range and that this was an impermissible use of his socio-economic status. In addition, Minor contends that the district court erred by taking into account his failure to disclose the transfer of the property to his late wife as an aggravating circumstance.

Minor's challenge is without merit. First, his reliance on *Painter* and *Graham* is misplaced. Those cases deal with challenges to upward *departures*, not *variances*. *See Irizarry v. United States*, 553 U.S. 708, 714 (2008) ("'Departure' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines."). The pertinent question in a departure case is whether "there exists an aggravating or mitigating circumstance of a kind . . . not adequately

---

[12] In *Whitfield*, because we remanded the case for resentencing, we declined to decide whether the district court took Minor's socio-economic status into account when imposing its fine. *See* 590 F.3d at 368. We did, however, conclude that there should be some level of reduction from the previously ordered fine of $2.75 million, as three counts upon which the fine was based were reversed. *See id.*

taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). Basing a departure on financial resources is an erroneous use of discretion because "the Sentencing Commission adequately considered a defendant's ability to pay in formulating the fine guideline." *Graham*, 946 F.2d at 21.

The district court, however, did not consider Minor's ability to pay in "departing" from the Guidelines; rather, the court properly utilized its discretion to vary from the Guidelines by taking into account Minor's financial resources when determining the appropriately punitive fine in the first instance. The district court's reliance on Minor's assets was not in reference to his socio-economic status. Instead, it was with regard to his ability to pay the fine and the need for the fine to be sufficiently punitive. *See* 18 U.S.C. § 3572(a)(1) ("In determining whether to impose a fine, and the amount, time for payment, and method of payment of a fine, the court *shall* consider . . . the defendant's income, earning capacity, and financial resources." (emphasis added)); *see also* U.S.S.G. § 5E1.2(d) (stating that a fine should be sufficiently punitive and take into consideration the defendant's ability to pay in light of earning capacity and financial resources).[13]

For the foregoing reasons, the district court's judgment on remand is AFFIRMED.

---

[13] Minor also argues that the district court erred by taking into account his failure to disclose the transfer of the property to his late-wife as an aggravating circumstance. However, even assuming *arguendo* that Minor is correct that the district court abused its discretion in this manner, he cannot show how the district court's consideration of the non-disclosure affected the fine imposed. Both the government and Minor agree that in imposing Minor's original sentence, the district court did not take the non-disclosure into consideration in setting the fine. Nevertheless, the original sentence still imposed a fine of $250,000 per count, the same amount imposed at resentencing. Accordingly, even if the district court's consideration of the non-disclosure as an aggravating circumstance was erroneous, it was harmless since it did not impact the amount of the fine.