# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 20, 2012

No. 11-50774

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

GILBERT SANCHEZ,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:09-CR-1567-1

Before KING, SMITH, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

This action concerns the attempt by an El Paso, Texas, attorney, Luther Jones, and the El Paso County district clerk, Gilbert Sanchez, among others, to have a county contract awarded to Jones' client, for which Jones and Sanchez were convicted of conspiring to commit wire and mail fraud to deprive citizens of honest services and to obtain money by material false or fraudulent pretenses,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50774

representations, or promises, in violation of 18 U.S.C. §§ 1341, 1343, 1346, and 1349. Jones was permitted to dismiss his appeal shortly before oral argument.

Sanchez challenges: the sufficiency of the evidence on the jurisdictional elements for wire and mail fraud; the jury's being instructed on a federal, not state, law basis for honest-services fraud; the indictment's failing to charge, and the jury instructions' failing to require finding, the conspiracy was intended to deprive the county of money or property; and his post-verdict absence when the jury was polled by the court *sua sponte*. AFFIRMED.

## I.

Jones, an attorney in El Paso, had served as assistant district attorney, state legislator, county attorney, and county judge. He was active in supporting and advising candidates for public office in El Paso, with his assistance usually being free. In 2002, Jones helped Sanchez win the election for district clerk. Sanchez took office in January 2003.

After the election, Jones recommended Sanchez' hiring Parra for the clerk's office. Parra, an information technology specialist, occasionally helped Jones with computer issues and campaign activities, including Sanchez'. (Parra was indicted as a co-conspirator, pled guilty, and testified against Jones and Sanchez.)

Sanchez recognized a need for modernization of the clerk's office and, with Parra's assistance, sought to develop a digitization plan to convert files into electronic databases (the project). They began communicating with companies capable of performing the project, including Altep, an El Paso company owned by Miller.

Altep's never having competed for a government contract, it sought legal assistance; Miller met with Jones' former law partner (Jones' partner), who encouraged Altep to hire both her and Jones, in part because Jones had experience competing for government contracts, but also because of his

2

assistance with Sanchez' election and influence in local politics. It was agreed that, if Altep were awarded the contract, Jones and his partner would receive one-third of the net profit.

Jones encouraged Miller to meet with, and make campaign contributions to, county commissioners to better position Altep for the contract, as the commissioners court would select the vendor. Prior to Commissioner Flores' receiving Miller's contribution, Jones told Flores to support Sanchez' project and make sure Altep got the contract, in exchange for a contribution. Miller contributed $1000 to Flores' campaign; at Jones' request, Miller also contributed to three other commissioners. (Like Parra, Flores was indicted as a co-conspirator, pled guilty, and testified against Jones and Sanchez.)

During February 2004, Altep co-sponsored an El Paso bar-association seminar in Las Vegas, Nevada, where Altep provided attorneys with information regarding "e-discovery" services. No new materials were presented relevant to Sanchez or Parra. Nevertheless, Sanchez requested Altep pay for his Las Vegas flight; Altep refused. Jones paid for Sanchez' trip, providing him a $750 check, which Sanchez cashed. When Parra learned Jones and his partner wanted to pay for him to attend as well, he declined.

In addition to the Las Vegas trip, Jones paid for dinner, drinks, and other entertainment for Sanchez and Parra while working on the project. Jones also paid for Sanchez' travel to Dallas, San Antonio, and New York.

In March 2004, the commissioners court authorized the county to issue a "request for proposal" (RFP) for the project. Jones encouraged Parra and Sanchez to meet with Altep representatives to assist in writing the RFP specifications, as they were to be drafted to favor Altep. This access to information and continuous communication allowed Altep to review the RFP months prior to its release to the public, and gave Parra time to make adjustments to the RFP to ensure Altep's ability to comply.

No. 11-50774

In response to the RFP, numerous vendors, in addition to Altep, submitted proposals, many of which were submitted via Federal Express, an interstate commercial carrier. Altep was able to ask questions directly to Parra, who responded immediately; other vendors, however, had to officially submit questions to the county's purchasing department and wait for answers in the form of addenda. Altep continued communicating with Jones and Sanchez to determine the company's prospects for obtaining the contract.

During May 2004, then-Commissioner Flores was the subject of an investigation for not fully reporting received political contributions. Because Jones was concerned Flores might be removed from the commissioners court, he wanted the project rushed through. On 23 May 2004, Jones e-mailed his partner, Miller, and Sanchez to suggest placing the vendor selection on the agenda for the 7 June 2004 commissioners-court meeting; he also requested input on the language to use for the agenda-item, and a meeting on 26 May in Miller's or his partner's office to discuss the project. Upon meeting, they discussed Flores' status and moving quickly on the project. Sanchez initially objected to the fast-track, but agreed eventually.

After proposals were submitted and reviewed by the county purchasing department, Parra acquired the clerk's office's copies and created a spreadsheet identifying whether a vendor complied with the requests in the RFP. Altep was the only vendor that complied fully.

On 7 June 2004, the day the project was to be discussed at the commissioners-court meeting, Parra provided Miller, Jones, his partner, and Sanchez each with a copy of the spreadsheet; and Miller was told Altep had won the contract (even though the decision had not yet been made). All but Jones attended the commissioners-court meeting; Jones wanted to ensure his participation in the project remained unknown.

4

No. 11-50774

During the meeting, an assistant county attorney, the legal advisor to the commissioners court, noticed Jones' partner had the spreadsheet with the vendor information, which was not to have been disclosed to anyone except the court. The assistant county attorney immediately requested a recess. Because Jones' partner's access to the spreadsheet defeated the impartiality of the procurement process, the assistant county attorney encouraged the court to reject the proposals. It agreed, and instructed the purchasing agent to rebid the project.

The project was never revived. It was later discovered the county never had the money to fund the contract. While some attempts were made to resume the project, these efforts, according to Parra, ceased after Flores pled guilty in July 2007 to her participation in the conspiracy.

A 2009 indictment charged Jones and Sanchez with conspiracy to commit wire fraud (count 1), conspiracy to commit mail fraud (count 2), mail fraud (count 3), and one count of bribery each (counts 4 and 5). Upon defendants' joint motion, the district court dismissed counts 3-5, leaving only the two conspiracy counts.

At the jury trial in 2011, upon completion of the Government's case-in-chief, Jones and Sanchez moved unsuccessfully for judgments of acquittal; they then presented evidence, including their testifying; and, after the Government's rebuttal evidence, Jones and Sanchez renewed their motions for judgments of acquittal, which were again denied. A special-verdict form inquired whether defendants conspired on each count in two ways: to defraud the citizens of El Paso County of the right to honest services; and to obtain money through false and fraudulent pretenses. Jones and Sanchez were found guilty on both prongs for both counts. Immediately after the jury returned its verdict, Jones and Sanchez were taken into custody; the district court, *sua sponte* and without objection, then polled the jury out of Jones' and Sanchez' presence.

5

No. 11-50774

Post-judgment, Jones and Sanchez moved for acquittal and a new trial; the motions were denied. In August 2011, they were each sentenced, *inter alia*, to 72-months' imprisonment on each count, to be served concurrently.

For his opening and reply briefs on appeal, pursuant to Federal Rule of Appellate Procedure 28(i), Sanchez adopted Jones' briefs, except for Jones' challenge to the search of his law office. As noted, Jones' unopposed motion to dismiss his appeal was granted.

## II.

Regarding his convictions of conspiracy to commit wire and mail fraud, Sanchez challenges: the sufficiency of the evidence for the jurisdictional elements of wire and mail fraud; the jury's being instructed based on a federal, not state, law basis for honest-services fraud; the indictment's failing to charge, and the jury instructions' failing to require finding, the conspiracy was intended to deprive the county of money or property; and his being absent when the jury was polled.

## A.

Sanchez claims insufficient evidence for a jury to find the wire-fraud conspiracy involved interstate wiring and the mail-fraud conspiracy involved a mailing or an intended mailing. As noted, Sanchez adopted this challenge from Jones' appellate briefs. This practice is permitted "when the arguments to be adopted are *equally applicable* to the adopting co-appellants". *United States v. Harris*, 932 F.2d 1529, 1533 (5th Cir. 1991) (emphasis in original). Accordingly, sufficiency-of-the-evidence, and other fact-specific, challenges, to the adopting appellant's conviction, without more, are generally "insufficient to raise that point of error". *Id.*; *e.g.*, *United States v. Morgan*, 117 F.3d 849, 853 (5th Cir. 1997). Here, however, because Sanchez' contention is "readily transferable from the proponent's case to the adopter's case", it will be considered. *United States v. Gibbs*, 182 F.3d 408, 421 (6th Cir. 1999) (quotation marks and citation

No. 11-50774

omitted) (allowing adoption by reference where contention, although fact-specific, was readily transferrable to all defendants). *See also United States v. David*, 940 F.2d 722, 737 (1st Cir. 1991) ("arguments adopted must be readily transferrable"); *United States ex rel. LaCorte v. SmithKline Beecham Clinical Lab., Inc.*, 149 F.3d 227, 237-38 (3d Cir. 1998) (same).

Through his motions for judgment of acquittal, Sanchez preserved his sufficiency challenge in district court; therefore, it is reviewed *de novo. E.g.*, *United States v. Delgado*, 256 F.3d 264, 273 (5th Cir. 2001). The "verdict will be affirmed if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt". *Id.* The evidence is not evaluated for weight or credibility, but "in the light most favorable to the verdict, drawing all reasonable inferences to support the verdict". *Id.* at 274.

### 1.

For conspiracy to commit wire fraud, the Government must prove beyond a reasonable doubt, *inter alia*, that it was intended or reasonably foreseeable that defendant "used interstate wire communications facilities [or] caused another person to use interstate wire communications facilities". FIFTH CIRCUIT PATTERN JURY INSTRUCTION § 2.60. *See* 18 U.S.C. § 1343. *E.g.*, *United States v. Odiodio*, 244 F.3d 398, 402 (5th Cir. 2001). An FBI Special Agent testified as an expert witness for the Government concerning the interstate nature of the e-mails at issue.

The jury heard testimony of how e-mails are traced, and how the above-described 23 May 2004 e-mail from Jones to his partner, Miller, and Sanchez (and other e-mails between them) traveled through an interstate server in California. The Agent testified that the tracing software he used never provided an incorrect result. Viewing the evidence in the requisite light most favorable to the verdict, a reasonable juror could find beyond a reasonable doubt that it

No. 11-50774

was reasonably foreseeable to Sanchez that interstate wire communications would be used.

**2.**

For conspiracy to commit mail fraud, the Government must prove beyond a reasonable doubt, *inter alia*, that the mails were intended or reasonably foreseen to be used to execute, or attempt to execute, a scheme to defraud, or to obtain "money or property by means of false or fraudulent pretenses". *United States v. McMillan*, 600 F.3d 434, 447 (5th Cir. 2010) (citation omitted). *See also* 18 U.S.C. § 1341; FIFTH CIRCUIT PATTERN JURY INSTRUCTION § 2.59. It is not necessary that Sanchez used the mails or intended them to be used; the Government must show the mailing was "incident to an essential part of the scheme". *United States v. Ingles*, 445 F.3d 830, 835 (5th Cir. 2006) (citation omitted). This requires proof that "completion of the alleged scheme . . . depend[ed] in some way on the information or documents that passed through the mail". *Id.* (internal quotation marks and citation omitted).

The scheme at issue concerns the attempted award of a county contract to a company represented by Jones. The county's RFP was an essential part of that scheme. The process required vendors to submit proposals in response to the RFP, many of which were submitted through Federal Express, an interstate carrier. *Cf. id.*, 445 F.3d at 837-38 (mailings not part of execution of fraud or incident to essential part of completion of scheme). In the light of the evidence, discussed *supra*, a reasonable juror could find beyond a reasonable doubt that the mailings were essential to executing the scheme.

**B.**

Sanchez next maintains, through Jones' briefing, that the district court committed reversible error by instructing the jury on the federal, rather than the Texas, law basis for deprivation of honest services. Jury instructions are ordinarily reviewed for abuse of discretion; but, when the instruction is claimed

to misstate an element of the offense, review is *de novo*, subject to harmless-error review. *United States v. Guevara*, 408 F.3d 252, 257 (5th Cir. 2005) (such misstatement is an issue of statutory construction, warranting *de novo* review).

The relevant statute for deprivation of honest services, 18 U.S.C. § 1346, provides: "For the purposes of this chapter [which includes §§ 1341, mail fraud, and 1343, wire fraud], the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services". The 2009 indictment referenced state law, consistent with *United States v. Brumley*, 116 F.3d 728, 734 (5th Cir. 1997) (en banc) (conviction of state official for deprivation of honest services under § 1346 must be predicated on breach of state-law duty).

Subsequently, the Supreme Court considered the scope of § 1346 in *Skilling v. United States*, 130 S. Ct. 2896 (2010). *Skilling* held § 1346 honest-services fraud should be confined to bribery and kickback schemes, *id.* at 2932, stating that this construction of § 1346 established a "uniform national standard", *id.* at 2933.

At trial in 2011, the Government maintained, contrary to the position taken by defendants, that *Skilling* had established federal law as the appropriate standard for § 1346, expressly foreclosing application of Texas' version of honest-services fraud; the district court agreed. Sanchez maintains *Skilling'*s "uniform national standard" confines such fraud to bribery and kickback schemes as a general category, to include such schemes under state law.

After briefs were filed, but before oral argument, *United States v. Teel*, 691 F.3d 578 (5th Cir. 2012), was decided. The Government and Jones, but not Sanchez, filed letters under Federal Rule of Appellate Procedure 28(j), regarding *Teel'*s application here.

No. 11-50774

In *Teel*, appellants maintained that, in the light of *Skilling*, the jury instructions were erroneous for defining bribery under Mississippi, rather than federal, law. *Id.* at 582. *Teel* held otherwise:

> A fair reading of *Skilling*, however, reveals that the Court was establishing a uniform national standard by construing § 1346 to clearly exclude conduct outside of bribery and kickbacks, such as conflict-of-interest schemes, not to establish *federal law* as the uniform national standard for the elements of bribery and kickbacks in § 1346 prosecutions. . . . Accordingly, we read *Skilling* as recognizing that § 1346 prosecutions may involve misconduct that is also a violation of state law.

*Id.* at 583-84 (emphasis in original).

As stated in *Teel*, *Skilling*'s "uniform national standard" does not obviate the requirement that a state official, when prosecuted under § 1346, owe a state-law duty. Therefore, the federal-law based instructions in this case constituted error. Accordingly, at issue is whether the error was harmless.

"A nonconstitutional trial error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict." *United States v. Wright*, 634 F.3d 770, 775 (5th Cir.), *cert. denied*, 132 S. Ct. 171 (2011) (citation omitted). An erroneous jury instruction will not be reversed if, "based on the entire record, [] the challenged instruction could not have affected the outcome of the case". *United States v. Nguyen*, 493 F.3d 613, 623 (5th Cir. 2007) (citation omitted).

Sanchez maintains the jury instructions harmed him by failing to include three of the requirements of Texas Penal Code § 36.02(a)(4): (1) a connection between the benefit conferred and a "specific" act by the official; (2) a "but for" causal connection between the benefit and the act; and (3) an "express agreement" shown by "direct evidence". Section 36.02(a)(4), however, concerns only political contributions.

No. 11-50774

The unchallenged instruction on conspiracy required the jury to agree unanimously that at least one of 21 overt acts listed in the instructions occurred; only one of them concerned political contributions.  For example, one of the non-political-contribution acts was: "On or about June 7, 2004, defendant Gilbert Sanchez and Fernando Parra provided Altep's president with a copy of the evaluation sheet reflecting Altep as the lowest bidder." Another overt act stated: "Jones paid entertainment expenses, including meals and drinks" for Sanchez and Parra, and the expenditures were reflected in Jones' bank journal as "an expense related to his representation of Altep".

Texas Penal Code § 36.02(a) addresses other types of acts that constitute bribery beyond subpart (a)(4)'s political contributions.  The indictment cites subpart (a)(1), which provides that a person commits bribery "if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another:  (1) any benefit as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant, party official or voter". TEX. PENAL CODE ANN.  § 36.02(a)(1).  Needless to say, this section has far greater reach than § 36.02(a)(4) as it relates to the charged overt acts.

Nevertheless, Sanchez asserts § 36.02(a)(4) was the proper instruction for all 21 of them.  As § 36.02(a)(4) only applies to one of the overt acts upon which the jury could base its conspiracy convictions, the failure to instruct on Texas-based honest-services fraud was harmless error. There was substantial evidence upon which a reasonable juror could have found any of the other 20 overt acts formed the basis for the conspiracies.  Re-stated, the instruction did not exert a substantial influence on the outcome of the case.

## C.

Through Jones' briefing, Sanchez objects to the indictment's failing to charge, and to the instructions' failing to require finding, the conspiracy was

intended to deprive the county of money or property. For the offense of mail fraud under 18 U.S.C. § 1341, the indictment must charge: "(1) the defendant devised or intended to devise a scheme to defraud; (2) the mails were used for the purpose of executing, or attempting to execute, the scheme; and (3) the falsehoods employed in the scheme were material". *McMillan*, 600 F.3d at 447 (quotation marks and citation omitted). A "scheme to defraud" means "any scheme to deprive another of money, property, or of the intangible right to honest services by means of false or fraudulent pretenses, representations, or promises". FIFTH CIRCUIT PATTERN JURY INSTRUCTION § 2.59. *E.g.*, *Teel*, 691 F.3d at 581 n.2. The elements for wire fraud under 18 U.S.C. § 1343 are the same as for mail fraud, except, of course, wire is substituted for mail use: the Government must establish the scheme was "perpetrated by means of wire, radio, or television communication in interstate or foreign commerce". *McMillan*, 600 F.3d at 447 n.24.

Conspiracy to commit these crimes requires: (1) defendant and at least one other person made an agreement to commit mail/wire fraud; (2) defendant knew the agreement's unlawful purpose and joined willfully, with the intent to further that unlawful purpose; and (3) during the existence of the conspiracy, one conspirator knowingly committed at least one overt act described in the indictment to accomplish some object or purpose of the conspiracy. FIFTH CIRCUIT PATTERN JURY INSTRUCTION § 2.20; 18 U.S.C. § 1349. *E.g.*, *United States v. Peterson*, 244 F.3d 385, 389 (5th Cir. 2001).

### 1.

Pre-trial, Sanchez did not raise his current challenge to the indictment. Nevertheless, he is permitted to do so on appeal. FED. R. CRIM. P. 12(b)(3)(B) (appellant must raise pre-trial motion alleging defect in indictment, but at any time may raise issue that indictment fails to invoke jurisdiction or state an offense). *See, e.g.*, *United States v. Devoll*, 39 F.3d 575, 578 (5th Cir. 1994)

(indictment's failure to state element of offense proper for consideration when raised for first time on appeal).

The sufficiency of an indictment is reviewed *de novo*; it must allege each element of the charged offense "as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding". *United States v. Bieganowski*, 313 F.3d 264, 285 (5th Cir. 2002) (quotation marks and citation omitted). Along that line, "the law does not compel a ritual of words", and "an indictment's validity depends on practical, not technical, considerations". *United States v. Ratcliff*, 488 F.3d 639, 643 (5th Cir. 2007) (quotation marks and citations omitted).

Although the indictment does not state explicitly that the scheme was intended to deprive the county of money or property, it states sufficiently the elements of the charged offenses as described above. And, a review of the indictment's allegations more than supports the scheme's being intended to deprive the county of money or property.

**2.**

As discussed above, when a jury instruction possibly misstates an element of the charged offense, it becomes an issue of statutory construction that warrants *de novo* review. *Guevara*, 408 F.3d at 257. Sanchez challenges the instructions for not requiring the jury to find the county was defrauded of money or property.

This challenge, too, is without merit, because, as the jury was instructed, completion of the contemplated scheme is not required to establish conspiracy. *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTION § 2.20 ("Nor must [the Government] prove . . . that the alleged conspirators actually succeeded in accomplishing their unlawful objectives".). *E.g.*, *United States v. Delgado*, 668 F.3d 219, 226 (5th Cir. 2012) (conspiracy conviction requires only proof of agreement to commit underlying act). Nevertheless, the jury did have a special-

verdict form, for it to find for each count, *inter alia*, whether: "Sanchez conspired to create a scheme or artifice to obtain money by material false or fraudulent pretenses, representations, or promises".

## D.

Finally, Sanchez contends, again through Jones' briefing, that his absence during the court's *sua sponte* post-verdict jury-poll was reversible error. Because he failed to make a contemporaneous challenge to not being present, review is only for plain error. *United States v. Curtis*, 635 F.3d 704, 714 (5th Cir.), *cert. denied*, 132 S. Ct. 191 (2011). For reversible plain error, Sanchez must show a clear or obvious error that affected his substantial rights. *E.g.*, *Puckett v. United States*, 556 U.S. 129, 135 (2009). He fails to do so.

Federal Rule of Criminal Procedure 43 requires a criminal defendant's presence at all stages of his trial, to include the return of the verdict. FED. R. CRIM. P. 43(a)(2). The right to be present stems primarily from the Sixth Amendment's Confrontation Clause, but is also protected under the Due Process Clause when "[defendant's] presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge". *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (quotation marks and citations omitted). The reach of this protection is "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only". *Id.* Sanchez fails to cite any decision holding Rule 43 violated when the court, *sua sponte* and after return of the verdict in defendant's presence, requires a jury-poll outside defendant's presence, nor any case with substantial similarity.

After the verdict was read and before Sanchez was removed from the courtroom, his counsel did not request the jury's being polled; nor did he request Sanchez' being returned to the courtroom after the court *sua sponte* ordered the poll to be conducted. A jury poll serves "to ascertain with certainty that a unanimous verdict has in fact been reached". *United States v. Jefferson*, 258

F.3d 405, 411 (5th Cir. 2001) (quotation marks and citation omitted).  Each juror's affirmative response in the poll indicated no hint of a lack of unanimity.

## III.

For the foregoing reasons, the judgment is AFFIRMED.


Judge King concurs in the judgment.