United States v. Zukerman

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

_____

August Term, 2017

(Argued: January 17, 2018          Decided: July 27, 2018)

Docket No. 17-948
_____

UNITED STATES OF AMERICA,

*Appellee,*

-- v. --

MORRIS E. ZUKERMAN

*Defendant-Appellant.*

_____

B e f o r e:

KATZMANN, *Chief Judge*, KEARSE and POOLER, *Circuit Judges*.

_____

Defendant-Appellant Morris Zukerman appeals from a judgment of conviction entered on March 21, 2017, in the United States District Court for the Southern District of New York (Torres, *J.*). After pleading guilty to tax evasion and to corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws in violation of 26 U.S.C. §§ 7201 and 7212(a), Zukerman

was sentenced to pay restitution of $37 million, serve a 70-month term of imprisonment, and pay a $10 million fine. On appeal, Zukerman contends that the fine component of his sentence was procedurally and substantively unreasonable. We find that the district court did not err in calculating the fine range recommended by the Sentencing Guidelines; that Zukerman was given adequate opportunity to inform the district court of his financial condition and ability to pay a fine; and that imposing a $10 million fine was within the district court's discretion. Accordingly, the judgment of the district court is **AFFIRMED.**

—————————————

STANLEY J. OKULA (Karl Metzner, *on the brief*), Assistant United States Attorneys, *for* Joon H. Kim, Acting United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

GREGORY G. GARRE (Roman Martinez and Graham E. Phillips, *on the brief*), Latham & Watkins LLP, Washington, DC, *for Defendant-Appellant*.

—————————————

PER CURIAM:

Defendant-Appellant Morris Zukerman appeals from a judgment of conviction entered on March 21, 2017, in the United States District Court for the Southern District of New York (Torres, *J.*). After pleading guilty to tax evasion and to corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws, Zukerman was sentenced to pay restitution of $37 million, serve a 70-month term of imprisonment, and pay a $10 million fine. On

2

appeal, this case calls on us to determine whether the fine imposed was procedurally and substantively unreasonable. It was not. In particular, the district court did not err in calculating the fine range recommended by the Sentencing Guidelines; Zukerman was given adequate opportunity to inform the district court of his financial condition and ability to pay a fine; and the imposition of a $10 million fine was within the district court's discretion. Accordingly, the judgment of the district court is **AFFIRMED.**

**\*\*\***

Morris Zukerman is the founder of M.E. Zukerman & Co., an investment management firm also known as "MEZCO." In 2007, a MEZCO subsidiary sold certain assets for $110 million, at which time Zukerman enacted a scheme to avoid paying taxes on the proceeds of that sale, as well as on approximately $12 million of operating income MEZCO received as a result of its earlier ownership of those assets. Zukerman falsified several documents in order to effectuate this scheme, which allowed MEZCO to evade over $30 million in taxes. When aspects of these transactions were audited by the Internal Revenue Service in 2008, Zukerman lied to the tax professionals working for him and fabricated documents relating to the transactions, causing several false statements to be

3

made to the IRS. *See In re Grand Jury Subpoena Dated March 2, 2015*, 628 F. App'x 13, 14-15 (2d Cir. 2015) (rejecting claims of attorney-client privilege relating to those false statements).

Separate and apart from those activities, Zukerman engaged in several other schemes to avoid paying taxes and to throw the IRS off of his trail. He avoided paying over $4.5 million in state taxes related to paintings used to decorate his and his families' living quarters, which were purchased, in part, with his ill-gotten gains from the MEZCO tax evasion. In addition, he provided false information in connection with his personal tax returns, as well as those of his family members and his household employees, causing each of them to file false tax returns over the course of several years. When the personal taxes of both Zukerman and his daughter were audited, Zukerman once again provided false documentation and representations to the IRS. Finally, Zukerman also failed to file several years' worth of tax returns for the Zukerman Family Trust despite the trust's receipt of significant taxable income.

On June 27, 2016, Zukerman pleaded guilty to tax evasion, in violation of 26 U.S.C. § 7201, and to corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a). In

4

addition to requiring that he pay restitution in the amount of $37 million, Zukerman's plea agreement stipulated to a Sentencing Guidelines range of between 70 to 87 months' imprisonment and a fine of between $25,000 to $250,000. On March 21, 2017, the district court principally sentenced Zukerman to a 70-month term of imprisonment, ordered $37 million to be paid in restitution, and imposed a fine of $10 million. Judgment was entered that same day, from which Zukerman appealed.

Following oral argument, we subsequently entered a summary order pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), remanding this matter to the district court for the limited purpose of elaborating on the rationale for the fine imposed. *United States v. Zukerman*, 710 F. App'x 499 (2d Cir. 2018). The district court provided such elaboration via a Supplemental Memorandum dated May 4, 2018 ("Supp. Mem."), after which the instant appeal was reinstated. We now address Zukerman's arguments.

On appeal, Zukerman contends that the fine component of his sentence was procedurally and substantively unreasonable. Because Zukerman did not raise any procedural objections below, his procedural arguments are "deemed forfeited on appeal unless they meet our standard for plain error." *United States*

5

*v. Villafuerte*, 502 F.3d 204, 207 (2d Cir. 2007). That standard requires Zukerman to "establish (1) error (2) that is plain and (3) affects substantial rights," only after which will we "consider whether to exercise our discretion to correct it, which is appropriate only if the error seriously affected the 'fairness, integrity, or public reputation of the judicial proceedings.'" *Id.* at 209 (quoting *United States v. Doe*, 297 F.3d 76, 82 (2d Cir. 2002)).

Zukerman's first procedural argument is that the district court overlooked U.S.S.G. § 5E1.2(h) in calculating the Guidelines' recommended sentencing range, which had the effect of doubling the recommended fine. That provision states that an earlier version of the Guidelines should be applied "[f]or offenses committed prior to November 1, 2015." Count One of Zukerman's indictment alleges that his corrupt endeavors to obstruct and impede the due administration of the internal revenue laws occurred "[f]rom in or about 2007 through in or about 2015," however, and Zukerman averred during his plea allocution that the conduct underlying Count One took place "from 2007 through 2015." Jt. App. 60, 99. One cannot reasonably interpret "through 2015" to mean only prior to November 1, 2015. Moreover, Zukerman's plea agreement expressly recognized the applicability of the Guidelines range of which he now complains. That the

6

district court did not apply the pre-November 1, 2015 Guidelines to Zukerman was not an error, much less a plain error.

Nor is there any merit to Zukerman's contention that inadequate consideration was given to his ability to pay a $10 million fine. As soon as the district court set a date for sentencing, it foreshadowed that a major fine was possible, requesting information concerning "how fines have been calculated" in "cases where you have this degree of violation of law." Jt. App. 107.  Zukerman subsequently submitted an affidavit regarding his financial condition as of August 2, 2016, at which time his net-worth was in the eight-figure range. Zukerman now contends that the affidavit was outdated by time he was sentenced in March 2017, but he declined to provide updated information in any of several submissions he made to the district court after receiving a revised Pre-Sentence Report on November 9, 2016, which incorporated information regarding his financial condition from his August 2016 affidavit. His failure to do so continued even after the government expressly asserted that he could "pay a substantial fine and should be ordered to do so—through a substantial variance from the $25,000 to $250,000 Guidelines range" in February 2017. *Id.* at 322. At his sentencing hearing, Zukerman objected neither specifically that he could not

afford to pay the fine imposed, nor more broadly that his financial condition had materially changed since the submission of his affidavit. He was afforded ample opportunity to attempt to show any limitations on his ability to pay a fine, yet he failed to do so. *See United States v. Elfgeeh*, 515 F.3d 100, 136 (2d Cir. 2008) (defendant must be given "at least a minimal opportunity to show that he lacks the ability to pay the fine"). Accordingly, it was not plain error for the district court to rely on the information that Zukerman himself had provided.[1]

We next address the substantive reasonableness of Zukerman's fine, which we review "under a 'deferential abuse-of-discretion standard,'" *United States v. Thavaraja*, 740 F.3d 253, 258 (2d Cir. 2014) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). We "identify[] as substantively unreasonable only those sentences that are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice," recognizing that although we "have a role to play in patrolling the boundaries of reasonableness, we do so modestly, not substituting our own judgment for that of the district courts." *United States v. Broxmeyer*, 699 F.3d 265,

---

[1] Zukerman's third procedural argument—that the district court's explanation of his sentence was inadequate—is moot in light of our *Jacobson* remand.

8

289 (2d Cir. 2012) (internal quotation marks, citation and alteration omitted). Under that lenient standard, Zukerman's fine is not unreasonable.

First, the district court "put significant weight on the nature and circumstances of [Zukerman's] crimes" pursuant to 18 U.S.C. § 3553(a)(1), explaining that "[t]ax crimes represent an especially damaging category of criminal offenses," which "strike[] at the foundation of a functioning government." Supp. Mem. at 5; *cf. New York ex rel. Cohn v. Graves*, 300 U.S. 308, 313 (1937) ("Enjoyment of the privileges of residence in the state and the attendant right to invoke the protection of its laws are inseparable from responsibility for sharing the costs of government."); *Compania Gen. de Tabacos de Filipinas v. Collector of Internal Revenue*, 275 U.S. 87, 100 (1927) (Holmes, *J.*, dissenting) ("Taxes are what we pay for civilized society . . . ."). Accordingly, the district court expressed deserved opprobrium for Zukerman's "calculated scheme to defraud the government of tens of millions of dollars for the sole purpose of increasing his personal wealth," executed through efforts that "spanned fifteen years and involved submitting more than 50 falsified tax forms for at least ten different individuals." Supp. Mem. at 6.

Zukerman counters that these factors do not support an upward variance from the recommended fine range because they were already addressed as part of his offense level under the Sentencing Guidelines. But the district court was not bound to conclude that the offense level adequately accounted for the complexity and scope of Zukerman's actions. To the contrary, "the historic role of sentencing judges," which "continue[s] to be exercised," is to consider "the judge's own sense of what is a fair and just sentence under all the circumstances." *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006). Moreover, "a district court's decision to vary from the Guidelines 'may attract the greatest respect when the sentencing judge finds a particular case outside the heartland to which the Commission intends individual Guidelines to apply.'" *United States v. Cavera*, 550 F.3d 180, 192 (2d Cir. 2008) (en banc) (quoting *Kimbrough v. United States*, 552 U.S. 85, 109 (2007)). In particular, the Guidelines related to tax offenses "drastically vary as to the recommended sentence based simply on the amount of money involved," such that "a district court may find that even after giving weight to the large or small financial impact, there is a wide variety of culpability amongst defendants and, as a result, impose different sentences." *Id.* Thus sentences varying from the Guidelines in tax matters, "if adequately explained,

10

should be reviewed especially deferentially." *Id.* We therefore accede to the finding that an above-Guidelines fine was necessary "to reflect the complexity, scope, and extreme nature of [Zukerman's] criminal activity." Supp. Mem. at 7; *cf.* Scott A. Schumacher, *Sentencing in Tax Cases After* Booker*: Striking the Right Balance Between Uniformity and Discretion*, 59 VILL. L. REV. 563, 594 (2014) (noting that the Guidelines "provide only a two-point increase for a sophisticated means adjustment," which "can be cancelled out by an acceptance of responsibility adjustment, making the defendant's culpability and the manner in which the tax loss was generated virtually irrelevant").

Second, and again pursuant to 18 U.S.C. § 3553(a)(1), the district court concluded that Zukerman's "history and characteristics also pointed toward a substantial above-Guidelines fine." Supp. Mem. at 7. This was based upon his "history of uncharged criminal conduct" and his "repeated refusal to fess up," despite having "had ample opportunities to come clean," as weighed against his "role in the lives of his friends and family, as well as his philanthropy." *Id.* at 8. Zukerman does not challenge the district court's weighing of these factors, nor could he. *See Broxmeyer*, 699 F.3d at 289 ("The particular weight to be afforded aggravating and mitigating factors 'is a matter firmly committed to the discretion

11

of the sentencing judge' . . . ." (quoting *United States v. Fernandez*, 443 F.3d 19, 32 (2d Cir. 2006)).

Third, the district court "put the most weight" on the need for deterrence, pursuant to 18 U.S.C. § 3553(a)(2)(B)-(C). Supp. Mem. at 9. As regards general deterrence, Zukerman asserts that his Guidelines-minimum term of imprisonment "is enough to make an example of him to others," Def. Br. 44, but the sentencing judge was by no means bound by such an argument. Instead, the district court determined that general deterrence "has a particularly important role" here "due to the significant resources required to monitor and prosecute tax crimes," which cost the government hundreds of billions of dollars annually. Supp. Mem. at 9. Moreover, the district court explained that enforcement of tax laws has "a 'significant and positive deterrent effect' on would-be tax violators" because, as compared to most criminals, "tax criminals are more likely to account for the size of a fine and the likelihood that it will be imposed" and are therefore more likely to eschew criminal conduct if it will be unprofitable. *Id.* at 10 (quoting Joshua D. Blank, *In Defense of Individual Tax Privacy*, 61 EMORY L.J. 265, 321 (2011), and citing Stephanos Bibas, *White-Collar Plea Bargaining and Sentencing After* Booker, 47 WM. & MARY L. REV. 721, 749 (2005)). That rationale is eminently

12

reasonable. *Cf. Cavera*, 550 F.3d at 196 ("Where the profits to be made from violating a law are higher, the penalty needs to be correspondingly higher to achieve the same amount of deterrence."); *United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it.").

Zukerman also summarily argues that it is "obvious" his fine is not necessary for purposes of specific deterrence in light of his prison term and the "pain and humiliation his prosecution has caused." Def. Br. 43-44. Although there can be little doubt Zukerman has suffered, we "must give due deference to the district court's decision" that specific deterrence justified an upward variance in light of Zukerman's long-running tax evasion scheme, *Gall*, 552 U.S. at 51. "It was clear" to the district court "that simply being caught did not deter" Zukerman, as his "criminal activities had only grown in size and scope" since they first began at the turn of the century. Supp. Mem. at 11. Given that an earlier "$233,000 slap-on-the-wrist . . . proved useless in dissuading [Zukerman] from evading his taxes" thereafter, the district court was entitled conclude that a

Guidelines-range fine of up to $250,000 would be similarly inadequate, such that "[a] significant penalty was required." *Id.* at 11-12. In light of Zukerman's enormous resources, the district court properly determined that a more onerous fine was needed in order to deter future illegal conduct. *See infra* at 17-19.[2]

Fourth, the district court recognized that there was some risk of an unwarranted sentencing disparity, but it "assigned less weight than it might typically have" to this factor because it found "few, if any, defendants" who were similarly situated. *Id.* at 12. Although Zukerman's fine is certainly an outlier as compared to the fines typically imposed in tax cases, his arguments based on aggregated sentencing data and vague summaries of other cases are unconvincing. The relevant question is not simply whether there are disparities, but whether there are "unwarranted sentence disparities" as between Zukerman and others "with similar records who have been found guilty of similar

---

[2] The district court noted that a longer incarceral term was not necessary in order to specifically deter Zukerman at his sentencing hearing, but it referenced the totality of his experience with the criminal justice system—including the fine imposed upon him—as necessary to achieving that end. *See* Special App. 38 ("I do not think that there is a need for a term of imprisonment at the higher end of the guidelines range in order to achieve the goal of specific deterrence. I have confidence that this experience throughout this case has gotten that message across loud and clear.").

conduct," 18 U.S.C. § 3553(a)(6). "The point merits little discussion" because Zukerman "failed to provide sufficient information to compel the district court to find that these [other defendants] were so similarly situated to himself that any disparity in sentence would be unwarranted." *Broxmeyer*, 699 F.3d at 296-97; *see also United States v. Irving*, 554 F.3d 64, 76 (2d Cir. 2009) ("The district court was not required to consult . . . statistics. Averages of sentences that provide no details underlying the sentences are unreliable to determine unwarranted disparity because they do not reflect the enhancements or adjustments for the aggravating or mitigating factors that distinguish individual cases." (internal quotation marks and alteration omitted)).[3]

---

[3] The only tax offender Zukerman discusses with specificity is Robert Pfaff, who was sentenced to 97 months' imprisonment and fined $3 million. As explained by the district court, however, there are myriad distinctions between Zukerman and Pfaff: (1) Pfaff designed and implemented fraudulent tax shelters on behalf of others but was not a direct beneficiary of the tax loss he caused, whereas here the tax loss directly benefitted Zukerman and his family; (2) Pfaff was convicted alongside two co-defendants, whereas Zukerman was the sole director of the scheme at issue; (3) Pfaff had no history of uncharged criminal conduct, whereas Zukerman had been dodging taxes for year prior to the conduct for which he was ultimately indicted; and (4) Pfaff had lost his entire net worth by time of his sentencing, whereas Zukerman still enjoyed a $35 million net worth. But even assuming *arguendo* that Pfaff and Zukerman were similarly situated, the disparity in their sentences points in both directions: Pfaff's fine may have been smaller, but he was also sentenced to an additional 27 months' imprisonment as compared to Zukerman. As a result, we cannot say whose sentence was more lenient. *Cf. United States v. Rinaldi*, 461 F.3d 922, 931 (7th Cir. 2006) (affirming

15

Fifth, the district court "looked to 18 U.S.C. § 3571(d), which permits a court to set a fine that is 'twice the gross loss.'" Supp. Mem. at 14. In light of the estimated $45 million tax loss caused by Zukerman, that would allow for a fine far larger than that which was actually imposed. The district court also considered that Zukerman's agreed-upon restitution was $7.5 million lower than the estimated tax loss and that several million dollars' worth of interest would have accrued in the years between the beginning of Zukerman's charged criminal conduct and his restitution payment. Taking these disparities into account, the district court concluded that a $10 million fine was "sufficient, but no greater than necessary," to comply with the statutorily enumerated factors to be considered in imposing a sentence. *Id.* at 15 (quoting 18 U.S.C. § 3553(a))**.** We infer from the district court's choice of language—*i.e.*, that it "looked to" this factor rather than "putting significant weight" on it—that this was a relatively minor aspect of the district court's analysis. *Cf. Novella v. Westchester Cnty.*, 661 F.3d 128, 142 (2d Cir. 2011) ("the presumption of consistent usage and

sentence where sentencing judge "chose not to increase [defendant's] term of imprisonment, but opted instead to increase the fine; punishing the perpetrator with a correlate of his own crime").

16

meaningful variation, and the textual cannon of *expressio unius est exclusio alterius*" suggest that "the presence of [a phrase] applicable to one [factor] makes clear that the [phrase's] omission" elsewhere "was deliberate").

Although Zukerman now asserts that the district court erred in considering the gap between his restitution and the estimated tax loss, as well as the absence of interest in calculating the tax loss, he cites no authority for the proposition that the district court could not take these factors into account. Indeed, these seem pertinent considerations in ensuring that Zukerman would not ultimately profit from his tax evasion. *See* 18 U.S.C. § 3572(a)(5) ("In determining whether to impose a fine, and the amount, . . . the court shall consider . . . the need to deprive the defendant of illegally obtained gains from the offense . . . ."). Regardless, we need not definitively rule on the propriety of these considerations because they were referenced in Zukerman's Pre-Sentence Report, the district court's adoption of which was unopposed by Zukerman.

Sixth, the district court "accorded significant weight to [Zukerman's] income and financial resources, as well as the limited burden of a $10 million fine." Supp. Mem. at 15. Zukerman contends that he is being unfairly punished because of his wealth, but 18 U.S.C. § 3572(a) mandates that "[i]n determining

17

whether to impose a fine," a sentencing judge "shall consider . . . the defendant's income, earning capacity, and financial resources," as well as "the burden that the fine will impose upon the defendant." That is in accord with the Sentencing Guidelines' instruction that sentencing judges "shall consider," among other factors, "the defendant's ability to pay the fine" and "the burden that the fine places on the defendant and his dependents." U.S.S.G. § 5E1.2(d)(2)-(3).

It stands to reason that a defendant's wealth is relevant in determining whether a particular fine will deter illegal conduct. Zukerman implies that sentencing judges should consider only whether a defendant is unable to pay a given fine, but nothing in the text or history of the Guidelines, let alone common sense, suggests that this is meant to be a one-way ratchet. A fine can only be an effective deterrent if it is painful to pay, and whether a given dollar amount hurts to cough up depends upon the wealth of the person paying it. Indeed, as noted above, a previous "$233,000 slap-on-the-wrist" did not deter Zukerman, with his extraordinary resources, from subsequently evading his taxes once again. Supp. Mem. at 11. We therefore join our sister Circuits in holding that a defendant's wealth and earning capacity are pertinent considerations in assessing an appropriate fine. *See United States v. Teel*, 691 F.3d 578, 591 (5th Cir. 2012) ("[T]he

court properly utilized its discretion to vary from the Guidelines by taking into account [the defendant's] financial resources when determining the appropriately punitive fine in the first instance."); *United States v. Koestner*, 628 F.3d 978, 980 (10th Cir. 2010) ("[T]he amount of the fine was reasonably related . . . to Koestner's ability to pay a fine . . . .") *United States v. Blackwell*, 459 F.3d 739, 771 (6th Cir. 2006) ("[T]he district court committed no error . . . in considering Defendant's ability to pay."); *see also United States v. Adams*, 243 F. App'x 249, 250 (9th Cir. 2007) ("Socioeconomic status is different than financial resources. The former has no place in sentencing, but the latter is required by statute." (internal citations omitted)).[4]

---

[4] We see no inconsistency between our holding and *United States v. Mancilla-Mendez*, 191 F. App'x 273, 274 (5th Cir. 2006), or *United States v. Graham*, 946 F.2d 19, 22 (4th Cir. 1991), on which Zukerman relies. "Those cases deal with challenges to upward *departures*, not *variances*." *Teel*, 691 F.3d at 591. The former "'is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines,'" whereas the latter "refers to a non-Guidelines sentence outside the Guidelines framework." *Pepper v. United States*, 562 U.S. 476, 498 n.12 (2011) (quoting *Irizarry v. United States*, 553 U.S. 708, 714 (2008)). "The pertinent question in a departure case is whether 'there exists an aggravating or mitigating circumstance of a kind . . . not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" *Teel*, 691 F.3d at 591 (quoting 18 U.S.C. § 3553(b)). In contrast, we address "variances from Guidelines ranges that a district court may find justified under the sentencing factors set forth in 18 U.S.C. § 3553(a)." *Irizarry*, 553 U.S. at 715. The district court properly recognized that distinction, as it "d[id] not find any grounds warranting

Lastly, the district court "put substantial weight" on the payment of restitution by "corporate entities," as a result of which "only the fine would be paid from [Zukerman's] own pocket." Supp. Mem. at 15. Zukerman responds that restitution was properly paid by MEZCO because it was MEZCO's tax evasion that caused most of the tax losses at issue and, in any event, payments made by MEZCO are tantamount to payments made by him. The latter point appears to be somewhat disingenuous, as elsewhere Zukerman takes the position that he no longer has any interest in MEZCO for purposes of asserting that the district court overestimated his net worth. Zukerman cannot have it both ways: if he no longer owns MEZCO and believes that its value is not attributable to him, it follows that he should not be credited with MEZCO's restitution payments.[5]

---

a departure under the guidelines," but nevertheless found "a variance pursuant to 18 United States Code § 3553(a) . . . appropriate" in this case. Special App. 6, 38.

[5] Zukerman informed the district court that he transferred his interest in MEZCO to his wife as a result of the publicity surrounding his prosecution. He subsequently argued that "Mrs. Zukerman's assets are not relevant to assessing her husband's ability to pay," Def. Br. 18-19 n.3, and that assets "belong[ing] exclusively to Zukerman's wife" could not "be fairly considered in assessing Zukerman's ability to pay," Def. Reply Br. 16.

Regardless of MEZCO's current ownership, however, a more fundamental principle remains: "Restitution is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused." *Kelly v. Robinson*, 479 U.S. 36, 49 n.10 (1986); *see also Paroline v. United States*, 134 S. Ct. 1710, 1726 (2014) ("The primary goal of restitution is remedial or compensatory, but it also serves punitive purposes." (internal citation omitted)). The district court was charged with ensuring that Zukerman's fine should be "punitive" when "taken together with other sanctions imposed." U.S.S.G. § 5E1.2(d). To the extent that the corporate payment of restitution reduced the degree to which restitution personally punished Zukerman, which seems likely given that it appears he owned only a 50% interest in MEZCO even prior to transferring those interests to his wife, it was well within the district court's discretion to counteract that effect by increasing the fine it imposed on him. In doing so, it "further[ed] the traditional sentencing goals of rehabilitation and deterrence, by forcing [Zukerman] to directly witness the effect[] of [his] crimes." *In re Silverman*, 616 F.3d 1001, 1009 (9th Cir. 2010); *cf. Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1643 (2017) ("[A] pecuniary sanction operates as a penalty only if it is

sought 'for the purpose of punishment, and to deter others from offending in like manner' . . . ." (quoting *Huntington v. Attrill*, 146 U.S. 657, 668 (1892))).

Focusing on each facet of the district court's reasoning individually, rather than their totality, is to miss the forest for the trees. The district court concluded that Zukerman, a very wealthy man who has repeatedly and brazenly committed sophisticated tax fraud—a rarely caught and more rarely punished offense that undercuts the functioning of state and federal governments—ought to pay a fine hefty enough to take any financial benefit out of his crimes and to give pause to others who might be tempted to commit similar crimes. The district court further concluded that the Guidelines range did not encompass a fine necessary to accomplish those ends. Instead, the district court calculated the size of the fine based, in part, on an estimate of the tax loss Zukerman caused less the amount of restitution he had agreed to pay. Zukerman's fine thus "resulted from the reasoned exercise of discretion." *Cavera*, 550 F.3d at 193. Under the "circumspect form of review" we apply when the substance of a sentence is challenged, *id.*, we need not find a district court's reasoning compelling in order to affirm, so long as "the sentence was reasonable," *Gall*, 552 U.S. at 56. Because we find that it was, we see no reason to overturn Zukerman's sentence in any respect.

22

For the foregoing reasons, we **AFFIRM** the judgment of the district court and **DENY** Zukerman's motion to stay his sentence pending this appeal as moot. We have considered all of the defendant's arguments and find in them no basis for vacatur.