**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**November 9, 2006**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 06-30242
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

FRANCISCO D. PINEIRO,
ALSO KNOWN AS, FRANK PINEIRO,

Defendant-Appellee

----------------------
Appeal from the
United States District Court
for the Western District of Louisiana
----------------------

Before KING, WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:

This appeal arises out of the post-Booker resentencing of Defendant-Appellee Francisco D. Pineiro.[1]  The facts and circumstances that frame this third appeal of Pineiro's sentence are adequately captured in United States v. Pineiro, 377 F.3d 464 (5th Cir. 2004) ("Pineiro I"), and United States v. Pineiro, 410 F.3d 282 (5th Cir. 2005) ("Pineiro II").  For the sake of brevity,

---

[1] See United States v. Booker, 543 U.S. 220 (2005).

therefore, we reiterate only those facts that are relevant to this appeal.

## I.  FACTS AND PROCEEDINGS

In February 2002, Pineiro was indicted on one count of conspiracy to distribute 100 kilograms or more of marijuana and 50 grams or more of cocaine powder in violation of United States Code, title 21, section 846, and on two counts of possession with intent to distribute and aiding and abetting the possession with intent to distribute marijuana in violation of United States Code, title 21, section 841(a)(1) and title 18, section 2.  At the conclusion of Pineiro's jury trial in October 2002, the jury returned a guilty verdict on all three counts.  In its response to a special drug-quantity interrogatory, the jury found Pineiro guilty of conspiring to distribute less than 50 kilograms of marijuana and 50 grams or less of cocaine.

In December 2002, a probation officer issued the customary Presentence Investigation Report ("PSR").  The PSR concluded that Pineiro was responsible for 453.6 kilograms of marijuana and 1,048.95 grams of cocaine.[2]  This produced a base offense level of

_____

[2] In the PSR, the probation officer noted the lesser amount of drugs for which Pineiro was convicted, but continued on in the related offense conduct section to find that Pineiro was responsible for the greater amount of drugs.

2

The PSR recommended that Pineiro receive a four-level sentence enhancement for his role as a leader or organizer of the conspiracy. This produced a total offense level of 32. And, as Pineiro had no prior convictions, his criminal history category was I. The combination of Pineiro's total offense level of 32 and criminal history category of I resulted in a guideline sentencing range of 121 to 151 months imprisonment.

Pineiro made several objections to the PSR, two of which were relevant to Pineiro I. First, in reliance on Apprendi v. New Jersey,[3] he asserted that he should be sentenced on the basis of the drug quantity found by the jury, not the quantity set forth in the PSR. Second, he contended that there was insufficient evidence offered at trial to support his organizer-leader enhancement.

At Pineiro's sentencing hearing in April 2003, the district court overruled his objections and sentenced him to 121 months imprisonment on Count 1 and 60 months imprisonment on each of Counts 2 and 3, with all sentences to run concurrently. Pineiro timely filed a notice of appeal.

While the first appeal was pending in this court, the Supreme Court decided Blakely v. Washington.[4] After supplemental briefing on whether Blakely applied to sentencing under the federal

_____

[3] 520 U.S. 466 (2000).

[4] 524 U.S. 296 (2004).

3

sentencing guidelines, and after oral argument in this court on all issues, we affirmed Pineiro's sentence, holding that Blakely did not affect the federal sentencing guidelines and that the district court's non-jury drug quantity finding and organizer-leader enhancement were not erroneous.[5]

Pineiro then filed a petition for certiorari in the Supreme Court. After issuing its opinions in Booker, the Court granted Pineiro certiorari, vacated our judgment, and remanded the matter to us for further consideration in light of Booker.[6]

On remand from the Court, we held in Pineiro II that the prosecution could not meet its burden of showing beyond a reasonable doubt that the district court would have imposed the same sentence under an advisory guideline. We concluded that in accordance with Booker, Pineiro was entitled to resentencing, so we remanded the case to the district court for resentencing.[7]

On remand from us, the district judge who had presided over Pineiro's trial and sentencing entered an order transferring the case to another district judge. Prior to being resentenced by the second judge, Pineiro again urged the district court to sentence him based on the drug quantities found by the jury and not to apply

---

[5] Pineiro I, 377 F.3d at 473-75.

[6] Pineiro v. United States, 543 U.S. 1101 (2005).

[7] Pineiro II, 410 F.3d at 285-87.

4

the four-level organizer-leader enhancement. Pineiro urged in the alternative that if these objections were overruled, the court should depart downward from the advisory range.

At Pineiro's resentencing in early 2006, the district court elected to re-visit Pineiro's original guideline sentencing range for the two reasons originally and again advocated by Pineiro —— the non-jury drug quantity findings and the organizer-leader enhancement. First, based on Apprendi and Booker, the district court accepted Pineiro's drug quantity argument and concluded that it was bound by the jury's determination as to the lesser quantity of drugs for which Pineiro was responsible. Second, as to the organizer-leader enhancement, the district court rejected Pineiro's contention. Accordingly, the district court reduced Pineiro's total offense level to 22, reflecting its use of the quantity of drugs found in the special jury interrogatory and its application of the organizer-leader enhancement. This produced an advisory range of 63 to 78 months imprisonment. The court then imposed a sentence of 63 months imprisonment on Count 1 and 60 months imprisonment on each of Counts 2 and 3, all sentences to run concurrently. The government timely filed a notice of appeal, which brings this matter before us today.

## II. LAW AND ANALYSIS

A.   Standard of Review

In this appeal following remand in <u>Pineiro II</u>, the government argues that the district court's recalculation of Pineiro's sentencing guideline range violated the <u>mandate rule</u> —— a facet of the law-of-the-case doctrine.  We review <u>de novo</u> a district court's interpretation of our remand order, including whether the law-of-the-case doctrine or mandate rule forecloses any of the district court's actions on remand.[8]

Pineiro contends that we should review the government's appeal under a plain error standard, not <u>de novo</u>.  He argues that, because the government failed to object to the district court's recalculation at the time of resentencing, we must conduct our review under the more deferential plain error standard.  This argument fails.

In determining the sufficiency of objections to preserve issues for appeal, we apply "'the general principle that an objection which is ample and timely to bring the alleged . . . error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to . . . preserve the

_____

[8] <u>United States v. Hamilton</u>, 440 F.3d 693, 697 (5th Cir. 2006).

claim for review.'"[9]  We have never required a party to express its objection in minute detail or ultra-precise terms.[10]

Despite never explicitly mentioning the law-of-the-case doctrine or the mandate rule, the government made clear at the resentencing hearing its objection to the district court's revisiting and recalculating Pineiro's total offense level.  For example, counsel for the government made the following statements: (1) "I don't think you can throw out the guideline range.  The calculation begins —— I think the purpose is that there is a guideline range and those —— that information, the drug quantity was properly calculated in that guideline range.  I think the Fifth Circuit has spoke [sic] to that;" (2) "I think now —— obviously now it is not mandatory, but it certainly doesn't negate Probation calculating that amount for relevant conduct purposes;" (3) "the guideline issues are no longer mandatory.  They're advisory as in any case.  The Defense put on evidence.  I mean, the Defense objected with [the original district judge] and he rejected it.  He rejected their argument then, and in saying that, mandatory or not, he believed it. . . . [E]ven though it was mandatory and not

---

[9] United States v. Williams, 985 F.2d 749, 755 (5th Cir. 1993) (quoting Osborne v. Ohio, 495 U.S. 103, 125 (1990)).

[10] See, e.g., United States v. Saldana, 427 F.3d 298, 314 n.67 (5th Cir. 2005); United States v. Akpan, 407 F.3d 360, 375-76 (5th Cir. 2005); United States v. Pankhurst, 118 F.3d 345, 356-57 (5th Cir. 1997).

7

advisory, I think that's the issue now, not that the guideline range was inappropriate to calculate it;" (4) "Now those guideline range [sic], the Government submits, are still appropriate, but this Court is well aware they're advisory only. That's an issue that exist [sic] here post-Booker;" (5) "So I think, again, the issue is not to the calculation aspect of it, it's simply an issue whether the Court will stay within the guideline range or find a reason to deviate from them, because they're now advisory, giving the Court the opportunity to go below or above that range;" and (6) "Whether or not [the original district judge] felt [the sentencing guideline range] was mandatory or not, I think it's why we're here." These statements, along with others, were sufficient to preserve the government's objection implicating the mandate rule and entitles it to a de novo review.

B. Applicable Law

The mandate rule, which is a corollary or specific application of the law of the case doctrine,[11] prohibits a district court on remand from reexamining an issue of law or fact previously decided on appeal and not resubmitted to the trial court on remand.[12] This prohibition covers issues decided both expressly and by necessary

---

[11] United States v. Lee, 358 F.3d 315, 320-21 (5th Cir. 2004).

[12] United States v. Matthews, 312 F.3d 652, 657 (5th Cir. 2002).

implication, and reflects the jurisprudential policy that once an issue is litigated and decided, "'that should be the end of the matter.'"[13] This rule is essential to the orderly administration of justice, as it is aimed at preventing obstinate litigants from repeatedly reasserting the same arguments and at discouraging opportunistic litigants from appealing repeatedly in the hope of acquiring a more favorable appellate panel.[14]

When on remand the district court assays to implement the mandate, it must proceed within the letter and spirit of the mandate by taking into account the appeals court's opinion and the circumstances it embraces.[15]  In the context of remands for resentencing, this circuit employs a restrictive approach: The resentencing court may consider only that which we direct — no more, no less.[16]  "All other issues not arising out of this court's ruling and not raised before the appeals court, which could have been brought in the original appeal, are not proper for

---

[13] Lee, 358 F.3d at 320 (citing Crowe v. Smith, 261 F.3d 558, 562 (5th Cir. 2002), and quoting United States v. United States Smelting Ref. & Mining Co., 339 U.S. 186, 198 (1950)).

[14] Matthews, 312 F.3d at 657.

[15] Sobley v. Southern Natural Gas Co., 302 F.3d 325, 333 (5th Cir. 2002).

[16] United States v. Marmolejo, 139 F.3d 528, 530-31 (5th Cir. 1998).

reconsideration by the district court below."[17]

Despite its importance, the mandate rule is a discretionary device and not immutable.[18] Three exceptions to the imposition of this rule are recognized: (1) Introduction of evidence at a subsequent trial that is substantially different; (2) an intervening change in controlling authority; and (3) a determination that the earlier decision was clearly erroneous and would work a manifest injustice.[19]

C.   Merits

In our de novo review, we address the substance of this appeal.   In Pineiro I, Pineiro sought review of the district court's two guideline rulings — the non-jury drug quantity finding and the organizer-leader enhancement.   After concluding that Blakely was not applicable to the federal guidelines, we affirmed both the drug quantity and organizer-leader determinations.

As to the drug quantity calculation, we noted in Pineiro I that "the Guidelines direct the judge to impose a sentence based not only on the conduct reflected in the verdict but also on other

---

[17] Id. at 531.

[18] United States v. Becerra, 155 F.3d 740, 753 (5th Cir. 1998).

[19] Id. at 752-53.

related conduct."[20]   We then concluded that the district court correctly calculated the quantity of drugs "notwithstanding the fact that the jury specifically acquitted Pineiro of the large drug quantities later found by the judge."[21]   As to the organizer-leader determination, we similarly concluded that there was no clear error in the district court's application of this enhancement to Pineiro.[22]

After granting certiorari, the Supreme Court vacated our decision in Pineiro I and remanded "for further consideration in light of United States v. Booker."[23]   Thus Booker did not work a change in the law subsequent to Pineiro II; that holding was a preceeding change vis-à-vis Pineiro II.

Given the scope of the Court's remand, we did not address any of Pineiro's earlier attacks on his guideline calculation, but instead, limited our review and thereby limited the scope of our eventual mandate to whether resentencing was required under the

---

[20] Pineiro I, 377 F.3d at 474 (citing U.S.S.G. § 1B1.3, and Edwards v. United States, 523 U.S. 511, 513-15 (1998)) (emphasis added).

[21] Id. (citing United States v. Watts, 519 U.S. 148, 152-57 (1997)).

[22] Id. at 475.

[23] Pineiro, 543 U.S. at 1101 (reporter citations omitted).

11

post-<u>Booker</u> advisory guideline regime.[24]  In conducting this review, the only issue we determined was that the government was not able to demonstrate that any <u>Booker</u> error was harmless beyond a reasonable doubt.  Consequently, we remanded this matter to the district court solely for "resentencing in accordance with <u>Booker</u>."[25]

By recalculating Pineiro's guideline range, the district court exceeded the scope of our mandate.  Under the limits of our mandate in <u>Pineiro II</u>, the district court was only to resentence Pineiro under an advisory guideline regime, not recalculate his total offense level; that had never been addressed or vacated on appeal. Under both the pre- and post-<u>Booker</u> regimes, a jury's verdict of acquittal on some drug-quantity counts does not prevent the sentencing court from considering conduct underlying the acquitted count as long as that "related" conduct has been proved by a preponderance of the evidence.[26]  Under this standard, we affirmed the sentencing finding of (1) drug quantity for purposes of calculating Pineiro's offense level and (2) Pineiro's organizer-leader status.  Neither <u>Booker</u> nor <u>Pineiro II</u> disturbed these

---

[24] <u>Pineiro II</u>, 410 F.3d at 283.

[25] <u>Id.</u> at 287.

[26] <u>United States v. Valdez</u>, 453 F.3d 252, 264 (5th Cir. 2006); <u>United States v. Cathey</u>, 259 F.3d 365, 368 (5th Cir. 2001).

findings.

In resentencing Pineiro on remand, the district court appears to have misapprehended <u>Booker</u> and our post-<u>Booker</u> caselaw when it concluded that it could sentence Pineiro only on facts that were established by either a guilty plea or jury verdict. It further appears that the district court recalculated Pineiro's total offense level based on this erroneous conclusion. The district court apparently believed it was following <u>Booker</u>, our post-<u>Booker</u> caselaw, and our mandate; it just misconstrued the three.

Moreover, this case does not present a situation involving any of the three exceptions to the mandate rule. There was neither a subsequent trial nor an intervening change in controlling authority between the issuance of our remand mandate in <u>Pineiro II</u> and Pineiro's resentencing on remand. Additionally, the decisions of our panels in <u>Pineiro I</u> and <u>Pineiro II</u> were not clearly erroneous and would not work a manifest injustice.

Finally, Pineiro asserts that even if the district court erred, such error was harmless, because that court would have imposed the same sentence even if it had not recalculated the total offense level. There is simply nothing in the record to support this contention. If anything, based on the district court's statements, it appears that the district court would not have departed downward from the guideline range —— especially not by

13

48%, which would be an extraordinary reduction requiring extraordinary circumstances.[27]

### III. CONCLUSION

Based on our view of the applicable law and our extensive review of the parties' briefs and the record on appeal, we conclude that the district court at resentencing exceeded the boundaries of our mandate. Accordingly, we again vacate Pineiro's sentence and remand for resentencing in a manner consistent with this opinion and the Supreme Court's opinion in Booker, and within the limits of our mandate in Pineiro II.

VACATED AND REMANDED.

---

[27] United States v. Desselle, 450 F.3d 179, 183 (5th Cir. 2006).

14