# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-70016

United States Court of Appeals
Fifth Circuit

**FILED**

September 21, 2020

Lyle W. Cayce
Clerk

FARYION EDWARD WARDRIP,

> Petitioner - Appellant Cross-Appellee

v.

BOBBY LUMPKIN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

> Respondent - Appellee Cross-Appellant

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 7:01-CV-247

Before HIGGINBOTHAM, SOUTHWICK, and HO, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

A state prisoner serving a capital sentence filed an application for a writ of *habeas corpus* in federal court. The federal district court granted relief based on the ineffectiveness of the prisoner's state trial counsel during the sentencing phase. The court ordered the prisoner's release if the State, within 180 days, neither initiated proceedings for a new sentencing trial nor acceded to a sentence of life imprisonment. We REVERSE the district court's grant of *habeas* relief and DENY the motion for a certificate of appealability.

No. 18-70016

## FACTUAL AND PROCEDURAL BACKGROUND

Faryion Edward Wardrip committed five murders in Texas between December 1984 and May 1986, four in Wichita County and one in Tarrant County. He claimed that abuse of illegal drugs was the reason for his crimes. After Wardrip murdered Tina Kimbrew in Wichita Falls in May 1986, he drove to Galveston, Texas, saying later that he had planned to commit suicide. Instead, he surrendered to Galveston police and confessed only to his latest murder. Later, he pled guilty to killing Kimbrew and was sentenced to 35 years in prison. Wardrip began serving the sentence in December 1986, and he then was released on parole in December 1997. His counsel in the present proceedings characterizes Wardrip as a model prisoner and argues that prior counsel was constitutionally ineffective at the sentencing phase of his capital murder trial for not having emphasized Wardrip's conduct during his 1986–1997 imprisonment.

In 1999, after DNA testing connected Wardrip to unsolved murders, he was questioned and then arrested. Wardrip eventually confessed to four other murders. The State indicted Wardrip for capital murder for the death of Terry Sims, one of the Wichita County victims. Wardrip pled guilty.

Wardrip's trial counsel was John Curry, a Wichita County public defender. Curry filed motions for disqualification of Judge Robert Brotherton based on the fact the judge had represented Wardrip's wife in their earlier divorce, and the judge had represented another, earlier suspect in the murder of one of Wardrip's other victims. At a hearing before a visiting judge, Curry questioned Judge Brotherton under oath regarding the earlier representations. Judge Brotherton testified that though he had represented the identified individuals, it would not affect his ability to be impartial in Wardrip's case. Judge Brotherton remained as the judge presiding over the prosecution of Wardrip for capital murder.

2

No. 18-70016

Before trial, Wardrip gave Curry a list of potential witnesses for the punishment phase of the trial. Curry then gave the list to Dana Rice, an investigator for the public defender's office. According to Curry, Wardrip's family had no interest in helping Wardrip because of the "anger and pain that [Wardrip's] family suffered when the news about [Wardrip] came out."

At trial, the State's witnesses testified regarding graphic details of each of the five murders. The State also introduced Wardrip's prison disciplinary record, which showed only two infractions during his 11 years in prison.

Wardrip's defense counsel called a parole officer and an employer to testify to Wardrip's good behavior while on parole. In a 2001 affidavit, Curry explained that although he thought the jury "needed to know" about evidence suggesting Wardrip had rehabilitated himself while in prison, this would have required putting Wardrip on the stand. According to Curry, "after careful consideration of the information that was available to [him, he] decided to reject the idea of trying to prove to the jury that [Wardrip] was a different man."

Curry decided that the best hope Wardrip had to avoid the death penalty was to focus on the fact that Wardrip had received only two disciplinary infractions in prison, so he would not be a future danger to others if he were to serve a life sentence. To make these points, Curry relied on the disciplinary record the State had admitted into evidence. Curry did not believe Wardrip's other activities in prison were relevant to the argument he was trying to make. In closing argument, Curry told jurors he was not arguing Wardrip was a "changed man," but instead Curry wanted jurors to focus on the fact that Wardrip was not a disciplinary problem and thus not a danger to anyone if imprisoned for life.

The jury had to answer questions regarding whether Wardrip would be a continuing threat to society and whether mitigating circumstances

warranted life imprisonment instead of the death penalty. During deliberation, the jury asked whether "threat to society" meant in public or in prison, but the court responded that there was no specific definition. Eventually, the jury returned its verdict, indicating their finding that Wardrip would be a threat to society and that mitigating circumstances did not warrant life imprisonment. The court sentenced Wardrip to death.

On direct appeal, Wardrip disputed only the sufficiency of the evidence at the punishment phase. The Texas Court of Criminal Appeals affirmed. *See Wardrip v. State*, 56 S.W.3d 588, 589–90, 595 (Tex. Crim. App. 2001).

While his direct appeal was pending, Wardrip filed his original state *habeas* application. By Texas statute, an application for a writ of *habeas corpus* by a state prisoner must be filed in the court in which the person was convicted, returnable to the Court of Criminal Appeals. TEX. CODE CRIM. PROC. ANN. art. 11.071 § 4(a). The applicable procedures are detailed in that statute, including the lower court's authority to conduct an evidentiary hearing in some circumstances. *Id.* §§ 4–10. At the end of the process, the court of conviction proposes findings of fact and conclusions of law to the Court of Criminal Appeals, which then makes the decision on the application. *Id.* §§ 9(f), 11.

In Wardrip's initial state *habeas* application, filed in October 2000, he alleged that he had suffered from ineffective assistance of trial counsel ("IATC") and stated seven grounds. There was no claim that counsel should have sought recusal of the trial judge. One ground was that Curry had "failed to put on any evidence of [Wardrip's] prison record." The omitted evidence was to explain Wardrip's conduct while in prison, such as working as a fireman and reporter, taking college classes, and organizing a charitable fundraiser. Wardrip also argued that Curry had been ineffective by failing to call certain

witnesses that could have described how Wardrip had changed since the murders.

The State responded by arguing that Curry made a strategic decision about the evidence to introduce. The State quoted extensively from an April 2001 affidavit in which Curry stated that he had known about Wardrip's "good work record while in prison." According to the affidavit, Curry's strategy was to convince the jury that Wardrip would not be a danger to society if given a life sentence in prison, and Curry felt that Wardrip's good conduct was not relevant to that argument. Curry stated in his affidavit that he had called Wardrip's employer and parole officer to testify to show that Wardrip could conform his conduct to an acceptable standard even when released, which Curry thought supported his argument that Wardrip would not be a danger to society while in prison.

Wardrip requested an evidentiary hearing, but the court refused, finding there were no material unresolved factual issues and no need for a hearing. A significant part of Wardrip's current argument is that the state *habeas* court's denial of a hearing justifies new evidence being introduced now. The state court issued proposed findings of fact and conclusions of law in June 2001, recommending denial of Wardrip's *habeas* application. The court accepted as true the facts detailed both in the State's answer to Wardrip's application and in Curry's affidavit. The court also found Curry was aware of Wardrip's good prison record and that Curry made strategic decisions concerning presentation of evidence. Regarding the evidence of Wardrip's good works in prison, the court concluded that Wardrip had not shown that Curry's representation was ineffective and that, regardless, Wardrip had not shown that any deficiency prejudiced him. In November 2001, the Court of Criminal Appeals adopted the trial court's findings and conclusions, and then denied relief.

No. 18-70016

In December 2002, Wardrip filed a federal *habeas* application in the Northern District of Texas. *See* 28 U.S.C. § 2254. Wardrip identified perceived shortcomings in Curry's approach to the trial judge's alleged bias. Wardrip requested an evidentiary hearing to establish his IATC claims, which the magistrate judge granted. At the hearing, Curry testified about his strategic decisions prior to and at Wardrip's trial, the details about the investigator with whom he had worked before and during trial, and his decisions about which witnesses to call at trial. This time, Curry indicated he could not answer several questions about his decision-making at trial because he no longer remembered. Wardrip also introduced exhibits not used at trial supporting his arguments regarding his good conduct while in prison from 1986 to 1997.

In July 2008, based in part on the evidence presented at the evidentiary hearing, the magistrate judge recommended that the district court grant relief on the claim that Curry's performance had been constitutionally ineffective because of the failure to show Wardrip's good works while in prison. The evidence that the magistrate judge concluded should have been offered included these matters: "Petitioner attended classes while previously in prison, including art, special education, horticulture and construction classes. These records also indicate that Petitioner took and passed the GED exam. Petitioner has also submitted evidence that Petitioner wrote sports-related articles as a unit reporter for the monthly prison newsletter." *Wardrip v. Thaler*, 705 F. Supp. 2d 593, 610 (N.D. Tex. 2010), *vacated*, 428 F. App'x 352 (5th Cir. 2011). The magistrate judge declined to address Wardrip's argument regarding potential conflict of Curry's investigator, finding it unexhausted because it had not been raised in Wardrip's federal *habeas* application. The magistrate judge did not address the trial judge's alleged bias, which also had not been raised as a ground for *habeas* relief.

No. 18-70016

In April 2010, the federal district court adopted those findings and conclusions and incorporated them into its own published opinion. *Id.* at 596. The district court's final judgment conditionally granted *habeas* relief, vacated the sentence of death, and ordered Wardrip released if within 180 days the State had not begun proceedings for a new sentencing trial or acceded to the imposition of a life sentence.

The State filed a notice of appeal in May 2010. While the case was pending, the Supreme Court issued its decision in *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011), which identified the scope of the record to be used by a federal court under Section 2254(d)(1). We then vacated the district court's judgment granting *habeas* relief and remanded "for reconsideration in light of the Supreme Court's decision in *Cullen v. Pinholster*." *Wardrip*, 428 F. App'x at 352.

While the case was on remand, the Supreme Court issued another significant decision, *Martinez v. Ryan*, 566 U.S. 1 (2012). Wardrip then filed supplemental briefing in the district court addressing the effect of *Pinholster* and *Martinez*. After this new briefing was filed, the Supreme Court issued another key decision, *Trevino v. Thaler*, 569 U.S. 413 (2013). *Martinez* and *Trevino* together hold that a counsel's ineffective assistance to a prisoner in state *habeas* proceedings can overcome the otherwise applicable bar to a federal court's consideration of a claim. *Id.* at 429.

Wardrip again filed supplemental briefing, arguing that *Trevino* permitted him to bring IATC claims on the grounds of Curry's investigator's alleged conflict, which in turn prevented Curry from performing his role effectively. The district court stayed proceedings to allow Wardrip to exhaust the new claims in state court. In December 2014, the Texas Court of Criminal Appeals dismissed Curry's application as an abuse of the writ and did not consider the merits. *See Ex parte Wardrip*, No. WR-49,657-02, 2014 WL

No. 18-70016

12713360, at *1 (Tex. Crim. App. Dec. 10, 2014). A concurring judge, joined by one colleague, would have reached the merits of the new claim but agreed with denying relief: "Having reviewed this application to determine whether applicant has presented a prima facie case on which relief could be granted, I conclude that he has not, and I, therefore, respectfully concur in this Court's judgment dismissing his claims." *Id.* (Alcala, J., concurring).

In Wardrip's amended federal *habeas* application, he raised IATC claims on grounds relating to his good works in prison, as well as to the allegedly conflicted investigator and biased judge. The magistrate judge, reviewing the effects of *Pinholster*, recommended the district court grant *habeas* relief on Wardrip's IATC claim about his good works in prison but concluded that the two other IATC claims were beyond the scope of remand. *See Wardrip v. Davis*, No. 7:01-CV-247-G-BF, 2017 WL 8677939, at *2, *12 (N.D. Tex. Nov. 29, 2017).

The district court adopted the findings and conclusions of the magistrate judge, granted *habeas* relief based on IATC regarding Wardrip's good works in prison, but denied a certificate of appealability ("COA") on claims relating to the allegedly conflicted investigator and biased judge. *See Wardrip v. Davis*, No. 7:01-CV-247-G, 2018 WL 1536279, at *3 (N.D. Tex. Mar. 29, 2018).

The State now appeals the grant of *habeas* relief, while Wardrip seeks review of these other IATC claims not considered by the district court.

## DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we "review[] issues of law *de novo* and findings of fact for clear error, applying the same deference to the state court's decision as did the district court." *Buckner v. Davis*, 945 F.3d 906, 909 (5th Cir. 2019). Granting relief requires that the state *habeas* proceedings resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The magistrate judge here, whose recommended findings and conclusions were adopted by the district court with some minor revisions, concluded that the state court's denial of Wardrip's *habeas* relief was an unreasonable under Section 2254(d)(2). The magistrate judge did not address Section 2254(d)(1), and neither will we.

The standard for reviewing fact findings is that "a determination of a factual issue made by a State court shall be presumed to be correct," and the applicant for relief "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." § 2254(e)(1).

Section 2254(d)(2) identifies the record to be used in reviewing a state court's decision by requiring that a federal court consider "the facts in light of the evidence presented in the State court proceeding." In 2011, the Supreme Court made clear that this limitation on the scope of the record also applied to Section 2254(d)(1) despite an absence there of similar statutory language. The Court said an "omission of clarifying language from § 2254(d)(1) just as likely reflects Congress' belief that such language was unnecessary as it does anything else." *Pinholster*, 563 U.S. at 185 & n.7.

The State presents its arguments for reversal in three parts, all focusing on applying the requirements of Section 2254(d)(2) to the state court's rejection of relief on Wardrip's *habeas* application. The State argues that the state court did not make an unreasonable determination of the facts by denying an evidentiary hearing or by relying on defense counsel's affidavit explaining his actions at trial. Further, the state court did not err in finding there was no prejudice to Wardrip resulting from any alleged ineffectiveness of counsel.

Finally, the district court erred by allowing introduction of new evidence not in the state court record, but even that evidence does not show ineffectiveness.

We combine those three issues into one and examine whether we should uphold the 2001 decision by the state *habeas* court.  In the course of our analysis, we will consider the propriety of the federal court conducting an evidentiary hearing to obtain evidence that the state *habeas* court did not have. We will also discuss possible prejudice resulting from any ineffectiveness.  A second issue is the propriety of a COA on other issues.

As we discuss the decision under review, we will refer to the magistrate judge's recommendations as the findings and conclusions of the district court because the district court adopted them.

## I.    *An unreasonable determination of the facts under Section 2254(d)(2)*

An individual claiming his trial counsel was ineffective "must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense." *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 689–94 (1984)). Review of *Strickland* claims is always deferential, and when this court reviews a state court determination under AEDPA, review is "doubly deferential." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

The State argues that the district court erred both in the procedure it followed and in its holdings on whether the state court had unreasonably determined relevant facts.  According to the State, the federal district court got off track procedurally when it held the state *habeas* court had erred in 2001 by refusing to allow Wardrip an evidentiary hearing on his claim that Curry failed to investigate and present evidence about Wardrip's prison record.  The state court concluded there was no need for a hearing because it found no unresolved factual issues.  The state court relied on Curry's affidavit that his strategy was

No. 18-70016

to try to show that Wardrip was not a dangerous man while in prison, and thus a life sentence, as opposed to a death sentence, would be adequate. That could be proved by showing how few prison-rule infractions Wardrip committed during his 11 years in prison, relying on the State's evidence. The affidavit also indicated that Curry had been unable to get cooperation from Wardrip's family and that Curry believed it would be a failed strategy to try to convince jurors that Wardrip was a "changed man" because of evidence the State could introduce to undermine that story.

The district court, though, determined that the state *habeas* court did not know enough facts to be reaching a decision on the claim. The district court's concern was that Curry had not adequately investigated what the available evidence might be. The district court concluded that it had authority to have an evidentiary hearing so long as the following part of Section 2254 did not bar one:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> **(A)** the claim relies on—
>
>> **(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

§ 2254(e)(2).

Under Section 2254(e)(2)(A)(i), additional factual development can be ordered if a new, relevant, retroactive rule of constitutional law has been

declared by the Supreme Court.  The new opinions identified by the district court were *Martinez* and *Trevino*, which announced what can be claimed in federal court under Section 2254 if counsel in the state *habeas* proceedings had been constitutionally ineffective.  *Trevino*, 569 U.S. at 429.  The outcome of the current appeal will not depend on whether the evidentiary hearing was appropriate, for reasons we will explain in due course.  Thus, we make no definitive holding as to whether new evidence should have been considered. Still, we see difficulties in interpreting Section 2254(e)(2)(A)(i) to apply to *Martinez* and *Trevino*, as those decisions excuse to some extent counsel's failures to perform effectively under the *law that already existed* at the time of the state *habeas* proceedings.   The statutory subsection for allowing introduction of new evidence, though, applies to a state *habeas* counsel's failure to make a *legal claim that did not yet exist.*

What is quite clear, though, is that the other reason for admitting new evidence — namely, for a claim that has "a factual predicate that could not have been previously discovered through the exercise of due diligence," § 2254(e)(2)(A)(ii), — is inapplicable.  That does not apply because the factual question the district court explored is whether Curry failed to offer evidence he could have obtained by any measure of diligence.

An erroneous decision by the state court in refusing to allow an evidentiary hearing was a central concern expressed by the district court.  The state *habeas* court, in denying a hearing, issued an order concluding that there were no unresolved factual findings in the record from the trial.  In the order, the state court was fulfilling its duty under the Texas *habeas* statute that "the convicting court shall determine whether controverted, previously unresolved factual issues material to the legality of the applicant's confinement exist and shall issue a written order of the determination."  TEX. CODE CRIM. PROC. ANN.

12

art. 11.071 § 8(a).  The State argues that was a legal conclusion, not a fact finding to be evaluated for unreasonableness under Section 2254(d)(2).

The only federal authority the State cited held that on summary judgment, courts "do not weigh the evidence, assess its probative value, or resolve any factual disputes; we merely search the record for resolution-determinative factual disputes." *Aubrey v. Sch. Bd. of Lafayette Par.*, 92 F.3d 316, 318 (5th Cir. 1996).  The State's analogy is a reasonable one, that whether there are controverted, unresolved and material factual issues is similar to whether there are genuine disputes of material fact.  This court recently a widely accepted treatise to say that "[w]hether a genuine dispute concerning a material fact exists is itself a question of law that must be decided by the court. It does not depend upon what either or both of the parties may have thought about the matter." *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 299 n.5 (5th Cir. 2019) (quoting 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2720 (4th ed. 2019)).

Applying this federal interpretation of what is a legal issue to the state court's decision that there were no material, controverted facts still to be resolved, we hold the state court made a legal conclusion, not a "determination of the facts in light of the evidence presented in the State court proceeding" as meant by Section 2254(d)(2).  Though we conclude it was error to hold that the denial of an evidentiary hearing was an unreasonable factual determination, the bigger issue remains of the reasonableness of the state court's actual factual determinations.  We examine those.

The state *habeas* court accepted Curry's assertion in his affidavit that he had known about Wardrip's "good work record while in prison."  Curry made a strategic decision to convince the jury that Wardrip would not be a danger to society if he served a life sentence in prison and to do so by showing jurors Wardrip's small number of disciplinary infractions.  Curry's tactical decision

was to rely on the State's introduction of Wardrip's prison disciplinary record. Curry believed that Wardrip's good conduct, beyond showing there were few rules violations, was not relevant to that argument. Curry stated that he had Wardrip's employer and parole officer testify to show that Wardrip could conform his conduct to an acceptable standard even when released, and Curry thought this supported his argument that Wardrip would not be a danger to society while in prison.

Curry explained that he rejected a "changed man" strategy because Curry believed there was evidence the State could use to undermine such a claim. Curry stated in his affidavit that "our investigation" had not produced witnesses sufficient to pursue the "changed man" theory.

The district court concluded that when the state *habeas* court refused to grant an evidentiary hearing, it deprived itself of an opportunity to learn more about what evidence might have been available if Curry had pursued it more aggressively. Wardrip had sought an evidentiary hearing in the state *habeas* proceedings in order to question his trial counsel, Curry, and to present other evidence of his good conduct while in prison. The district court examined the evidence that had been obtained in the evidentiary hearing before the magistrate judge and concluded there were not many strategic decisions by Curry, but instead there was a failure resulting from not performing his pretrial preparations effectively. The hearing produced evidence that Curry had not made many of the useful contacts with potential witnesses that were needed, and that Curry's only contact with Wardrip's family was the result of one or two phone calls initiated by one of Wardrip's sisters. Of concern as well to the district court was Curry's inability to explain his decision-making during his testimony before the magistrate judge in 2006.

The reasonableness of trial counsel's choices is dependent upon the reasonableness of the investigation upon which those choices are based. *See*

*Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Reasonable choices cannot be made based on avoidable ignorance. *See id.* at 521-22. "[T]rial counsel's failure to adequately investigate available mitigating evidence — for example, by declining to follow up with possible witnesses . . . — amounts to ineffective assistance of counsel." *Escamilla v. Stephens*, 749 F.3d 380, 388 (5th Cir. 2014). Doubtlessly, Curry could have investigated more than he did, but reasonableness does not require counsel to pursue every possible line of mitigating evidence. *See Wiggins*, 539 U.S. at 533.

The state *habeas* court's decision that Curry satisfied his obligations under *Strickland* was based on the determination that Curry had made a conscious decision to pursue a trial strategy that did not include evidence of Wardrip's good works while in prison. Our question is only whether that state *habeas* court decision was an unreasonable determination of the facts. Wardrip argues that the state *habeas* court "simply assumed" that Curry had made a strategic decision to limit his investigation into Wardrip's good prison conduct. Whatever was in the state judge's mind is beyond our review, but the state *habeas* court had the trial record itself as well as Curry's affidavit explaining his decisions. The state court found that under *Strickland*, Wardrip "can demonstrate neither deficient performance nor prejudicial effect."

The state *habeas* court had to give a "heavy measure of deference" to Curry's decision. *Strickland*, 466 U.S. at 691. "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations and quotation marks omitted). The state *habeas* court's determination of factual issues is presumed to be correct. We find nothing even in the expanded record to overcome that presumption, though we have suggested that an evidentiary hearing should not have been conducted in district court.

No. 18-70016

In light of the evidence presented in the state court proceeding, it was not an "unreasonable determination of the facts" for the state *habeas* court to find that Curry had conducted a reasonable investigation that made him aware of Wardrip's good conduct while in prison, and based on that investigation that Curry made a reasonable strategic decision regarding what evidence to present, thus satisfying *Strickland*'s standard for effective assistance of counsel. Moreover, it was reasonable for the state court to conclude that whatever else Curry might have done, the failure to take those steps had not prejudiced Wardrip.

## II.    *Certificate of appealability*

An appeal of a final order in a *habeas* proceeding may not be taken to this court "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). This court will not grant a COA unless there is "a substantial showing of the denial of a constitutional right." § 2253(c)(2). Where a "district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," granting a COA requires "that reasonable jurists could debate both the procedural ruling and whether the petition states a valid constitutional claim." *Blackman v. Davis*, 909 F.3d 772, 778 (5th Cir. 2018), *as revised* (Dec. 26, 2018) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), *cert. denied*, 139 S. Ct. 1215 (2019).

The district court cited the mandate rule in denying Wardrip's motion for a COA on the following new arguments about ineffective trial counsel: (1) the investigator used by counsel at the original proceedings in state court had a conflict of interest, and (2) the state court judge also had a conflict. The mandate rule requires that a district court on remand effect this court's mandate. *See Perez v. Stephens*, 784 F.3d 276, 280 (5th Cir. 2015). A district

16

court "must implement both the letter and spirit of the appellate court's mandate." *Id.* (quoting *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002)).

With a different emphasis, though consistently with what we have just stated, we have also observed that this mandate rule is "a corollary of the law of the case doctrine." *Fisher v. Univ. of Tex.*, 758 F.3d 633, 639 (5th Cir. 2014), *aff'd*, 136 S. Ct. 2198 (2016). Viewed from that perspective, it certainly prevents relitigation of what has already been decided, but the mandate rule allows a district court to consider "an intervening change in controlling authority" applicable to one of the issues on remand. *United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006). It also has been called discretionary and not "immutable." *Id.*

Here, the order remanding this case back to the district court after the State's first appeal merely vacated the district court's judgment and remanded for reconsideration in light of *Pinholster*, a case dealing with what evidence a federal court can consider when reviewing a state *habeas* court's decision. *Wardrip*, 428 F. App'x at 352. The federal district court recognized that the claims in question had been raised after the remand and had not been considered in its prior decision. The court then held they could not be "reconsidered." *Wardrip*, 2018 WL 1536279, at *1.

The claims for which Wardrip seeks a COA were not before the district court when it issued its April 2010 judgment. Though the claims of Curry's ineffectiveness in dealing with an allegedly deficient investigator and biased trial judge were not raised in the initial state *habeas* litigation, the decisions in *Martinez* and *Trevino*, decided in 2012 and 2013, made it possible to allege ineffectiveness of state *habeas* counsel in failing to present a claim. *Trevino*, 569 U.S. at 429. They were not intervening decisions regarding the issue of the remand, namely, the claim about Curry's failure to present evidence of

No. 18-70016

Wardrip's prison work record.  Though the mandate rule is discretionary, we conclude there was no abuse of discretion in failing to consider the new claims. The district court did not err in failing to consider the claims raised for the first time after remand.

The judgment of the district court granting *habeas* relief is REVERSED and RENDERED, and Wardrip's application for a COA is DENIED.

No. 18-70016

PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring in part and dissenting in part:

I concur in the denial of a COA on Wardrip's investigator-conflict and judicial-bias claims, but I would affirm the district court's conditional grant of habeas relief on the ineffective-assistance-of-trial-counsel ("IATC") claim arising from defense counsel's failure to investigate and present Wardrip's prison record. I depart from the majority's conclusions on both the applicable standard of review and the merits of the claim.

## I.

Returning to Wardrip's representation, after Wardrip confessed to the murder of Terry Sims in 1999, Wichita County public defender John Curry was appointed to represent him at the punishment-phase trial. There, the jury would be asked to determine whether Wardrip would "constitute a continuing threat to society" and whether there was sufficient mitigating evidence to warrant a sentence of life imprisonment rather than death.[1] Only if the jury unanimously answered yes to the first question and no to the second question could the court impose a death sentence.[2]

Although Curry had never handled a capital case on his own, he diligently raised the issue of the trial judge's potential bias. His inexperience, however, left him to fall short in other areas. While I join the majority's denial of a COA on the investigator-bias issue for procedural reasons, Curry in fact entrusted the examination of Wardrip's witness list to an investigator who he knew had a personal relationship with the family of one of Wardrip's victims, and medical conditions that limited her ability to work during the crucial

---

[1] *See* TEX. CODE CRIM. PROC. ANN. art. 37.0711 §§ 3(b)–(g). The jury also had to decide whether Wardrip had caused Sims's death "deliberately and with the reasonable expectation that [death] would result." *See id.* § 3(b)(1). With Wardrip's confession, the State was not challenged on this element.

[2] *See id.* §§ 3(d)(1), (f)(2).

period leading to trial. Curry never employed a mitigation expert, and though he did have Wardrip examined by a psychologist, he did not follow the ensuing recommendation that Wardrip be tested by a neurologist for temporal lobe epilepsy.

## II.

With Wardrip's criminal record, his only hope heading into trial was to persuade the jury on the future dangerousness issue. Curry considered a "changed man" argument premised on Wardrip's clean record and community involvement in the time since his 1997 release. He ultimately rejected that strategy, facing Wardrip's history of falsehoods and few witnesses willing to testify on his behalf. This reality left Curry with a single strategy—persuading at least one juror that Wardrip was not a continuing threat as he "could conform his conduct to the rules and regulations of prison and not be a threat to other inmates or the staff."

So far, this reads as reasonable trial strategy. Yet, Curry relied on a single piece of evidence: that Wardrip "had only two minor disciplinary reports" over the course of nearly twelve years in prison. Curry did not request any other records. Among those unmentioned prison records were numerous facts that would have given the jury a more complete picture of Wardrip's life in prison than a bare recitation of his disciplinary infractions. There was evidence that, while in prison, Wardrip worked as a fireman and reporter, earned his GED, attended classes, acted as a trustee, and raised funds for a young man in need of a kidney transplant.

In state habeas proceedings, Curry submitted an affidavit explaining his litigation strategy. As to the prison-record issue, Curry stated:

> In the end, it appeared to me that the best hope we had of getting a life sentence was to rely on . . . the fact that Faryion had spent almost 12 years in prison and had only two minor

disciplinary reports. . . . I was fortunate in that the State provided to the jury the documentation which showed Faryion's disciplinary history during the time he spent in prison. . . . I felt that whatever good things he might have accomplished in prison were not really relevant to the argument I was trying to make. I wanted the jury to know one thing: that society would be more than adequately protected by sentencing Faryion to life in prison. Whether he contributed to prison society was not relevant to that argument.

The explanation is contradictory. If a defendant's best hope to avoid the death penalty rests on his prison record of nonviolence, counsel is duty bound to develop and present any evidence in support of that defense. Curry, however, made no mention of attempts to locate records or witnesses who might speak to Wardrip's time in prison—to the contrary, he was "fortunate" that the State introduced the disciplinary record itself.[3] Curry explained that those records were not relevant to his defense because he was not presenting a "changed man" theory. Thus, in Curry's view, the subject of Wardrip's life in prison beyond the infractions was not persuasive; it was irrelevant and unnecessary. Curry offered no principled reason for limiting his investigation into the one aspect of Wardrip's life that comprised his sole mitigation strategy.

Nevertheless, adopting the State's findings of fact and conclusions of law almost verbatim, the state habeas court found that Curry had made a "strategic" and "tactical decision to rely on the State's evidence to show [Wardrip's] prison record" rather than conducting his own investigation. I agree with the federal district court that the decision based on this factual

---

[3] As the magistrate judge put it, Curry's affidavit "suggests that this document being in front of the jury was the result of a favorable accident rather than an intentional decision by trial counsel."

No. 18-70016

finding is "unreasonable . . . in light of the evidence presented" to the state habeas court.[4] I am persuaded that Wardrip's prison-record IATC claim overcomes AEDPA's relitigation bar and would review Wardrip's claim *de novo*.

## III.

*Strickland* requires a defendant to show both deficient performance and prejudice—that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[5] The majority correctly observes that *Strickland* does not require defense counsel to investigate every possible piece of mitigating evidence.[6] Of course, but the problem identified by Wardrip and the district court is that Wardrip's earlier prison tenure was the *single* line of evidence relating to Curry's trial strategy: to show that while Wardrip should be locked away from the public, he posed no danger to his fellow prisoners or the prison staff. The premise being urged is not that counsel must collect every conceivable shred of evidence related to mitigation; it is that once counsel has narrowed his trial strategy to one specific point, he is obligated to thoroughly investigate that point. Curry's performance was constitutionally deficient.

## IV.

As the State points out, Wardrip's crimes were many and heinous, and the jury may have found a death sentence appropriate regardless of any additional evidence bearing on his future dangerousness.[7] Ultimately, however, our question is whether there is a reasonable probability that at least

---

[4] 28 U.S.C. § 2254(d)(2).

[5] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

[6] *See Wiggins v. Smith*, 539 U.S. 510, 533 (2003).

[7] *See Wong v. Belmontes*, 558 U.S. 15, 27–28 (2009) (per curiam) (observing that in cases of extreme brutality, additional mitigation evidence—even if substantial—may fail to "outweigh[] the facts" of a defendant's crimes).

one juror would have held out for life imprisonment had the jury received evidence of the depth of Wardrip's successful integration into the prison community.[8] I believe there is. The jury tells us.

During deliberations, the jury submitted a note to the court asking: "[D]efine threat to society. Public or prison?" The trial judge responded that "there is no specific definition for the term[]." Curry made no objection to this response, which makes plain that conduct-inside versus conduct-outside was the fulcrum of the jury's decision. Certainly, the note discloses that the jury, "consistent with the focus of the parties," was concentrated on the "key issue of [Wardrip's] dangerousness."[9] And this distinction—that Wardrip, though a threat to the general public, had a history of compliance in a structured prison environment such that those around him would be protected by a life sentence—was central. The note sharply undercuts counsel's contention that the evidence not offered had no relevance.

The State contends that even if the prison-record evidence may initially have affected the jury's view of Wardrip's future dangerousness, "any likelihood of an altered outcome from introducing this evidence would have been washed away by the State on rebuttal." The State's sole support for this position is a statement assertedly made by Stephen Wood, who had been in prison with Wardrip during his tenure for Tina Kimbrew's murder. According to notes in the district attorney's files, Wood described Wardrip as a "con man" and "freak" who "had the guards and counselors fooled that he was a model prisoner, but who had another side to him when he got mad." Should Curry

---

[8] *See Andrus v. Texas*, 140 S. Ct. 1875, 1886 (2020) (internal quotation marks and citations omitted) (Because Texas's death penalty statute "require[s] a unanimous jury recommendation," a showing of prejudice "requires only a reasonable probability that at least one juror would have struck a different balance . . . .")

[9] *Buck v. Davis*, 137 S. Ct. 759, 776 (2017).

have introduced Wardrip's prison records, the State claims, it would have "swiftly and dramatically undercut" that evidence with Wood's testimony.

The State oversells its case. Juries are not naïve, and they can be expected to cast a questioning eye upon testimony by prisoners. These "notes" of the prosecution were never tested in open court. It is telling that the State, given its burden on future dangerousness, did not put Stephen Wood on the stand, and nothing in the record suggests that the witness was on standby. And even if Wood testified in open court, that testimony would not contradict Wardrip's prison record. Wood does not claim Wardrip exhibited any violent or dangerous behavior, only that he was "fooling" prison authorities into thinking he was a model prisoner. The jury did not seek information about Wardrip's character; they sought information about Wardrip's ability to comport himself appropriately within the strictures of the prison environment, an ability not denied by Wood. What mattered in the jury's future-dangerousness inquiry was how Wardrip behaved in prison—whether he stayed out of trouble and contributed to the prison community—not whether his character or his motives had grown pure.

## V.

In sum, I would affirm the district court's conditional grant of habeas relief. Curry's failure to investigate the single issue on which he staked his client's case rendered his performance constitutionally inadequate, and to my eyes, there is a reasonable probability that a single juror would have imposed a life sentence rather than death had Wardrip's prison record been properly examined. This conclusion is not influenced by evidence received at the district court's evidentiary hearing but is based solely on the information available to the state habeas court.

As the Supreme Court has observed, evaluating future dangerousness is an "unusual inquiry" for jurors, as they are "not asked to determine a historical

fact concerning [the defendant's] conduct, but to render a predictive judgment inevitably entailing a degree of speculation."[10] It is nonetheless an essential inquiry, and in this case defense counsel neglected his obligation to ensure it was an informed one as well.

While we do not demand perfect, error-free trials—even when life or death is the issue—we do, and we must, insist on competent performance. With no issue of guilt, the focus of the penalty stage is the more demanding, as the defense loses its opportunity to develop the identity and the goodwill for the mitigation case, while leaving the prosecutor free to recount the details of the crime to the jury at the sentencing phase. With this compression, shortcomings of counsel are the more lethal—in the real world of the trial court, so far removed from counsel and judges reflecting with pen and able assistance at hand and with no clock running.

---

[10] *Id.*